**Opinion issued March 27, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00286-CR

## NO. 01-13-00287-CR

_____

**CHRISTIAN EUGENE WHEELER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Court Case Nos. 12-09-09602-CR-CTI & 12-09-09602-CR-CTII**

---

## O P I N I O N

Appellant, Christian Eugene Wheeler, pleaded guilty without an agreed recommendation as to punishment to the first-degree felony offense of possession

with intent to deliver between four and two hundred grams of a controlled substance, methamphetamine, and to the state jail felony offense of theft of a firearm.[1] The trial court assessed punishment at confinement for twenty years and confinement for six months, respectively, to run concurrently. In one issue, appellant contends that his trial counsel rendered constitutionally ineffective assistance at his sentencing hearing by (1) failing to object to the State's repeated use of leading questions when examining one of the detectives and (2) failing to object to the State's and the detective's characterization of one of the firearms recovered during the search of appellant's residence as a machine gun.

We affirm.

## Background

The State charged appellant with the offenses of possession of a controlled substance with intent to distribute and theft of a firearm, arising out of a raid of his trailer home by Montgomery County Sheriff's Department ("MCSD") officers.[2]

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2010) (providing that possession with intent to deliver between four and two hundred grams of controlled substance in penalty group one is first-degree felony); *id.* § 481.102(6) (Vernon 2010) (providing that methamphetamine is penalty group one substance); TEX. PENAL CODE ANN. § 31.03(e)(4)(C) (Vernon Supp. 2013) (providing that theft of firearm is state jail felony).

[2]    The Texas Supreme Court transferred this appeal from the Court of Appeals for the Ninth District of Texas to this Court pursuant to its docket equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

Appellant pleaded guilty to both offenses without an agreed recommendation on punishment. The trial court accepted appellant's guilty plea and set the sentencing hearing for a later date to allow for the preparation of a presentence investigation report.

MCSD Detective S. Spiller testified at the sentencing hearing. Detective Spiller testified that in the course of investigating appellant officers discovered that he was trafficking narcotics from his residence. On August 23, 2012, after approximately six months of investigation, officers executed a search warrant for appellant's trailer. Detective Spiller testified that ten people, including appellant, were inside the trailer at the time of the search. According to Detective Spiller, officers recovered approximately thirty-five grams of methamphetamine, pills, drug paraphernalia, cash, cell phones, surveillance cameras, and multiple firearms from the trailer.

Defense counsel did not object to the State's use of allegedly improper leading and argumentative questions throughout the examination of Detective Spiller. For example, the State asked Detective Spiller:

[The State]: And was [the search] done in midafternoon on a hot Thursday afternoon in Montgomery County, Texas?

[Det. Spiller]: That is correct.

[The State]: Was this done at a time where most people should have been working or doing something other than laying in a trailer getting high on meth?

3

[Det. Spiller]:    That is correct.

The State later asked, "And were the ten people that you observed [in the trailer] in various physical states, no shirts on, consistent with what you had seen, people laying around, multiple people on couches, beds, et cetera, consistent with a den— a dope house?"  Detective Spiller responded, "That is correct."  On appeal, appellant identified over thirty other instances in which the State asked Detective Spiller leading and argumentative questions yet defense counsel did not object.

When asked by the prosecutor what types of firearms the officers recovered during the search, Detective Spiller stated, "There were several long guns, which were rifles, sawed-off shotguns.  We came across a machine gun, handgun, several handguns, ammunition in various places.  The firearms were loaded, most of them."  The prosecutor then showed Detective Spiller State's Exhibit 24, which depicted several of the recovered firearms, and asked her, "[D]oes this look like an Uzi here in the top left corner?"  Detective Spiller responded, "Yes.  That's a machine gun."  Both of these statements referred to a Cobray M-11 firearm. Defense counsel did not object to the State and Detective Spiller characterizing this weapon as a "machine gun."

During closing argument, defense counsel argued that the prosecutor wanted to put appellant in prison instead of allowing him to complete a drug rehabilitation program.  The prosecutor responded,

4

It ain't about me. I don't want it to be about me. I want it to be about the people of this county. I want it to be about law enforcement when they risk their necks to go into a house where everybody—or at least this Defendant—is armed to the hilt with automatic machine guns.

Defense counsel did not object to this reference to "machine guns." The prosecutor did not mention "machine guns" again during the remainder of his closing argument. The only other reference to a machine gun occurred when the trial court mentioned the presence of a machine gun as it addressed appellant before assessing his punishment.

The trial court ultimately assessed punishment at twenty years' confinement for the possession with intent to distribute offense and six months' confinement for the theft of a firearm offense, to run concurrently. Appellant filed a motion for new trial but did not raise ineffective assistance of counsel as a basis for granting a new trial. Appellant's motion for new trial was overruled by operation of law, and this appeal followed.

**Ineffective Assistance of Counsel**

In his sole issue, appellant contends that his trial counsel rendered constitutionally ineffective assistance by failing to object to (1) the State's repeated use of leading questions when questioning one of the detectives and (2) the State's and the detective's characterization of one of the firearms recovered during the search of appellant's residence as a machine gun.

5

### A. Standard of Review

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for his counsel's unprofessional error, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable

6

probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63; *see also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003) ("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reason for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's

7

alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them."). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

### B. Failure to Object to Leading Questions

Unless a witness is a hostile witness, an adverse party, or a witness identified with an adverse party, leading questions should not be used on direct examination "except as may be necessary to develop the testimony of the witness." TEX. R. EVID. 611(c); *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd). "Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back." *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd). Leading questions may, however, be acceptable at the discretion of the trial court. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000) (construing former Texas Rule of Criminal Evidence 610(c)); *see also Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982) (stating, prior to adoption of Rules of

8

Evidence, that "[u]nless a defendant can show that he was unduly prejudiced by virtue of such [leading] questions, no reversal of his conviction will result").

Despite the general rule disfavoring the use of leading questions on direct examination, "it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." *Young*, 10 S.W.3d at 713. When the record is silent concerning why defense counsel failed to object to the State's use of leading questions, the appellant fails to rebut the presumption that this conduct constitutes reasonable trial strategy. *See id.*; *see also Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Appellant has not carried his burden of rebutting the presumption that counsel's [failure to object to leading questions] might be considered sound trial strategy. The record is silent as to why counsel did not make these objections, and we may not speculate on this issue."); *Malone v. State*, 935 S.W.2d 433, 440 (Tex. App.—Tyler 1996, no pet.) (holding that appellant failed to establish that defense counsel's failure to object to leading questions constituted ineffective assistance when he did "not explain how this omission hurt his case or fell below an objective standard of reasonableness"). Moreover, when, as here, the trial court is the trier of fact, the court "would not consider inadmissible evidence or be affected by leading questions." *Posey v. State*, 763 S.W.2d 872, 877 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Here, appellant argues that his trial counsel rendered ineffective assistance by failing to object to the State's repeated use of leading and argumentative questions when examining Detective Spiller, the State's primary fact witness. On appeal, appellant identifies more than thirty instances in which the State asked Detective Spiller a leading question. As an example, appellant points to the following exchange between the State and Detective Spiller:

| [The State]: | And was [the raid on appellant's trailer] done in midafternoon on a hot Thursday afternoon in Montgomery County, Texas? |
| [Det. Spiller]: | That is correct. |
| [The State]: | Was this done at a time where most people should have been working or doing something other than laying in a trailer getting high on meth? |
| [Det. Spiller]: | That is correct. |

Defense counsel never objected on leading or argumentative grounds during Detective Spiller's testimony. Appellant argues that "it was never apparent that Det. Spiller was capable of testifying to many of the 'facts' that the prosecution provided for her."

Even if the State asked Detective Spiller improper leading and argumentative questions to which defense counsel did not object, appellant has not established that the testimony sought in the questioning was inadmissible or would not have otherwise come into evidence if defense counsel had objected, the trial court had sustained the objection, and the State had rephrased its questions. "[I]t is

10

sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." *Young*, 10 S.W.3d at 713. Appellant filed a motion for new trial but did not raise ineffective assistance as a basis for granting a new trial, and, therefore, the record is silent as to why defense counsel did not object to the State's questions. We will not speculate on the reasons for trial counsel's failure to object. *See Wert*, 383 S.W.3d at 757; *Young*, 10 S.W.3d at 713. Moreover, the State questioned Detective Spiller at the sentencing hearing following appellant's guilty plea, and this hearing was held before the trial court. When the trial court is the fact finder, the court "would not consider inadmissible evidence or be affected by leading questions." *Posey*, 763 S.W.2d at 877.

We conclude that appellant has not met his burden to establish, by a preponderance of the evidence, that his trial counsel rendered ineffective assistance by failing to object to the State's leading and argumentative questioning of Detective Spiller.

### C. Failure to Object to Characterization of Recovered Firearm as Machine Gun

Appellant also contends that his trial counsel rendered ineffective assistance when he failed to object to the State's and Detective Spiller's characterization of one of the weapons recovered during the search of appellant's residence as a machine gun because this particular firearm, a Cobray M-11, did not meet the

11

statutory definition of "machine gun," as defined in Penal Code section 46.01(9). *See* TEX. PENAL CODE ANN. § 46.01(9) (Vernon Supp. 2013) (defining "machine gun" as "any firearm that is capable of shooting more than two shots automatically, without manual reloading, by a single function of the trigger").

During the sentencing hearing, Detective Spiller testified that officers discovered several firearms during the search of appellant's trailer. Specifically, she stated, "There were several long guns, which were rifles, sawed-off shotguns. We came across a machine gun, handgun, several handguns, ammunition in various places. The firearms were loaded, most of them." The State then showed Detective Spiller Exhibit 24, a photograph that depicted several firearms recovered during the search, and asked, "[D]oes this look like an Uzi here in the top left corner?" Detective Spiller replied, "Yes. That's a machine gun." During closing argument, the State made a reference to everyone in appellant's trailer, "or at least this Defendant," being "armed to the hilt with automatic machine guns." Defense counsel did not object to any of these references to a "machine gun."

On appeal, appellant argues that the particular Cobray M-11 recovered by police officers in the search of his trailer is a semi-automatic weapon, and not a submachine gun, and therefore the firearm does not meet the statutory definition of "machine gun." Although he cites no authority to support his contention, appellant argues that trial counsel rendered ineffective assistance when he "never challenged

the [State's] assertion that the Cobray M11 was a 'machine gun.'" He further argues that this failure prejudiced him because the trial court specifically mentioned the fact that appellant possessed a machine gun "as a factor in his sentencing."

As the State points out, this case did not require the State to prove that the Cobray M-11, or any other firearm recovered during the search, met the statutory definition of a "machine gun." Appellant was not charged with committing, for example, the offense of possessing a prohibited weapon. *See* TEX. PENAL CODE ANN. § 46.05(a)(2) (Vernon Supp. 2013) ("A person commits an offense if the person intentionally or knowingly possesses, manufactures, transports, repairs, or sells . . . a machine gun."). Appellant was instead charged with possession of a controlled substance with intent to distribute and theft of a firearm. The charging instrument for the theft of a firearm offense did not require the State to establish that appellant stole a particular type of firearm.

Even if defense counsel's representation fell below an objective standard of reasonableness when he failed to object to the State's characterization of the Cobray M-11 as a "machine gun," we agree with the State that appellant has not demonstrated prejudice—that is, that a reasonable likelihood exists that, but for trial counsel's failure in this regard, the result of the proceeding would have been

13

different.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812.  The trial court made the following statements before sentencing appellant:

> Your comments to the presentence report writer did not help you. Your testimony did not help you very much either.  Your attorney is trying to defend you, and there's not a lot of good things to say about you.  It's not as if when you got out on bond you started paying child support, you started doing the right thing, you got a job.  No, what you did on bond is you went and you used.  And you came to this Court and tested positive.  And, so, I really believe that the past behavior is a really good predictor of future behavior.  Your past behavior is not good.
>
> One of the highlights of the presentence investigation report was when you were asked about employment you said, I'm not going to lie to you, quote, I've never had a job, I don't have an employment history, I've always had women take care of me.  That went over really well with me.  Not.  Okay?  The fact that you're in a place and you're having your cousin go and get you things because you don't want to leave, the surveillance cameras, the fact that you had a machine gun, that just—it [is] indicative of—I'm thankful that there was no violence.  I will give you credit for that.  But the fact that you had nine—I heard from this testimony—nine firearms in the house—you had money—you had $1,000 in cash, you had pills.  You had numerous cell phones which were gifts and surveillance cameras which were gifts—I don't have friends bringing me surveillance cameras.  Your testimony was not credible to me.  And the fact that you have a fiancée who apparently is trying to get better and get over her addiction—last I heard one of the tools they teach you is to not hang out with drug users and drug dealers.  And that, sir, is what you are.  You may use, but you also deal.
>
> And I—I am concerned about the danger that you pose to our community, and I'm concerned about the fact that you talked about your problem and how you would be benefited.  Well, I have to think about the county's benefit.  And I don't think you deserve probation. I think the last thing we need is for you to be out there.  You had an opportunity the last 32 years to live your life in a certain way, and you made choices that put you here.  And so I'm going to sentence you to 20 years in prison in TDC.

14

Appellant is correct that the trial court mentioned the fact that he possessed a machine gun in the trailer at the time of the search, but the trial court also outlined numerous other facts from the testimony presented at the sentencing hearing and from the presentence investigation report that influenced its sentencing decision. The trial court sentenced appellant to twenty years' confinement, which is well within the statutory punishment range for a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2010) (providing that possession with intent to distribute between four and two hundred grams of controlled substance in penalty group one is first-degree felony); TEX. PENAL CODE ANN. § 12.32(a) (Vernon 2011) (providing that punishment range for first-degree felony is confinement for five to ninety-nine years or life).

Appellant has not established that, had his trial counsel objected to the characterization of the Cobray M-11 as a "machine gun," and thus required the State to refer to the firearm as a "semi-automatic" weapon instead, a reasonable probability exists that the trial court would have assessed a less severe punishment. *See Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (stating, in case in which jury assessed punishment, that question was "whether there is a reasonable probability that the jury's assessment of punishment in this case would have been less severe in the absence of counsel's deficient performance").

We therefore hold that appellant has not establish that his trial counsel rendered constitutionally ineffective assistance when he failed to object to the State's (1) use of leading and argumentative questions and (2) characterization of one of the weapons recovered as a "machine gun."

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Publish.  TEX. R. APP. P. 47.2(b).