

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00062-CR

ROBERT RAMIREZ        APPELLANT

V.

THE STATE OF TEXAS        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1346024R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Robert Ramirez appeals from his conviction for aggravated assault with a deadly weapon. In two issues, Appellant argues that the evidence is insufficient to support a finding that he had inflicted or had caused the serious

---

[1]*See* Tex. R. App. P. 47.4.

bodily injury alleged in the indictment and that he had received ineffective assistance of counsel.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 1, 2012, Jose Portillo was working on the roof of his restaurant at 4221 Hemphill Street when he noticed someone lying on the ground.  Portillo got down from the roof and found Ricky Soto "in pretty bad shape."[2]  Portillo said that Soto was so swollen and bloody that he did not initially recognize Soto until people around him said, "[H]ey, that's Ricky."  Soto was conscious and was moaning loudly that his ribs hurt.  Portillo called 911 at 3:55 p.m., and Medstar arrived shortly thereafter and transported Soto to the hospital.

The police responded to the scene around 4:22 p.m. and found no evidence of a fight.  The police learned from homeless people in the area[3] that Medstar had come and had already left the scene, but the police formed the impression that no one had been taken to the hospital.  Later that night, however, the police were notified that a victim from the Hemphill area had been transported by Medstar to John Peter Smith Hospital earlier in the day, that he had died, and that his body had been taken to the medical examiner's office.

---

[2]Portillo testified that he knew Soto because Soto had performed handyman work at the restaurant.

[3]The record revealed that homeless people were known to congregate in the area behind the restaurant.

Detective Thomas Boetcher inspected Soto's body at the medical examiner's office. Detective Boetcher testified that Soto had a large "bleeding area" under his skin that was black and blue; some superficial cutting on his face, on his left cheek, around his left ear area, and on his chest cavity; a bloody nose; and a cut lip. Detective Boetcher testified that based on his training and experience as a police officer of thirty-two years, Soto's injuries were consistent with someone who had been punched or kicked multiple times. Detective Boetcher testified that this constituted serious bodily injury.

After observing the body, Detective Boetcher went to the location where Soto was found and talked with some of the homeless people who were behind the restaurant. They said that Zacarius Guzman (also known as Jalisco) might have seen the assault. Detective Boetcher met with Jalisco, and he pointed out Appellant as the person he had seen assault Soto.[4]

Detective Boetcher spoke with Appellant on March 2, 2012, and observed that he had a cut on his lip. Detective Boetcher asked Appellant if he would come talk to him at the police department about a fight that he was allegedly involved in the previous day, and Appellant agreed to speak with him. During his interview, Appellant initially denied involvement in an assault on Soto, saying that he had fought a black man. Appellant later admitted that he had been involved in two fights with Soto on March 1, 2012, and that his purpose in going back for the

---

[4]Although subpoenaed, Jalisco did not appear at the trial.

second fight was to get revenge for the first fight in which Soto had punched him in the face six times. Appellant said that he had hit Soto six times, including once in the side of the head, and had kicked him twice in the side. A video of Appellant's interview was played for the jury, and his written statement was read into the record. In his written statement, Appellant stated,

I, Robert Ramirez, acknowledge that I am not in custody and I am free to leave at any time. I have voluntarily chosen to make the following statement:

MY FULL NAME IS ROBERT RAMIREZ. I AM 44 YEARS OF AGE. MY DATE OF BIRTH IS 07/21/1968. I LIVE AT 4001 S ADAMS STREET, FORT WORTH, TX 76115. I HAVE COMPLETED 10 YEARS OF SCHOOL. I CAN READ, WRITE, AND UNDERSTAND THE ENGLISH LANGUAGE.

I mostly live on the street but sometimes I go to my wife's house at 4001 S Adams. Yesterday I was behind the store on Hemphill where the police found me today. It's hard for me to remember but there were a couple people there with me, Hector Rene and Bobby was there and I don't know his last name. There was a girl there named Susana and I can't remember who else. I was drinking at the time and Ricky walked up. I don't know Ricky's last name but is homeless and I've know[n] him for about 3 years. I was squatting down against the building when Ricky walked up and punched me in the face. He hit me about 6 times with his fists. I stood up and we started fighting. I punched him one time with my fist and kicked him with my foot twice in the side. I told him I was going to walk it off. Ricky stood there as I walked away. But I told him I'm going to walk it off and I'm not going to forget what you did to me and I'm going to come back for you.

I walked around the block and then I walked back to the store. I found him behind the store lying down. I asked him if he was ready for me, it was about two hours later. He stood up and then we started fighting again. I hit him first with my fist and then he punched me in the mouth. Eventually we both ended up on the ground wrestling. We fought for about 2–3 minutes. I know I kicked him both times on the same side of his body. I asked him what this was

4

all about anyway, and he didn't say anything. I went and bought him a beer and he took it.

We got into the fight the first time about 1:30 or 2:00 and about 3:30 [or] 4:00 we got into the second fight. He was my best friend. I wasn't trying to kill him.

After talking to Appellant, Detective Boetcher—noting that Soto had told Medstar that he had been attacked by three people—did not believe the statement in the investigator's report was accurate. Moreover, Detective Boetcher testified that his investigation did not lead him to believe that the second fight was mutual because of the time span between the first fight and the second fight; the degree of force used in stomping Soto and hitting him; and the bruises to Soto's armpit, to the side of his body, and to his face.

Jesse Vasquez, a friend of both Appellant and Soto, testified that he had spent "[p]retty much all day" with Appellant on March 1, 2012. Vasquez said that they drank beer together for a couple of hours in the alley behind Rocky's store before they ran into Soto. Vasquez said that Jalisco and Soto came up to them and that Soto "got in [Appellant's] face and looked at him straight in his face like this, and didn't say nothing. And all of a sudden[,] he just started punching him in his face." Appellant did not do anything; he did not have a chance.[5] Vasquez told Soto that if he hit Appellant again, Vasquez was going to hit Soto, and Soto

_____

[5]When asked whether he had heard Appellant say something to Soto like, "I'm going to walk this off, but I'm coming back for you," Vasquez testified that Appellant did not say anything like that. Vasquez said that Appellant only asked Soto, "[W]hy did you do that?"

and Jalisco took off down the alley toward an establishment referred to as Ernesto's.

Vasquez and Appellant went to a store on Henderson and Bolt, and Vasquez bought Appellant a twenty-four-ounce beer to "cool off." After drinking for a couple of hours, Appellant told Vasquez that he was hungry, so they went toward the alley and ran into Soto and Jalisco, who were sitting down. Soto saw Appellant coming and got up from his seated position, and the two "went at each other" and wrestled. Vasquez testified that he ultimately told Appellant that was enough and that Appellant listened to him. Vasquez said that Soto was shaking his head when they left.

Michelle Cantu, who knew Appellant from the streets and through her ex-boyfriend Jose Martinez, testified that she was with her ex-boyfriend on March 2, 2012, when they ran into Appellant. Cantu recalled that Appellant had told them that he had just killed his best friend and that he was about to go on a rampage.

Dr. Susan Roe, a deputy medical examiner at the Tarrant County Medical Examiner's Office, testified that Dr. Lloyd White had conducted the autopsy on Soto on March 2, 2012,[6] and that she had conducted a peer review of Soto's autopsy. Dr. Roe opined that the cause of Soto's death was hemorrhagic shock due to a lacerated right kidney, due to blunt trauma of the abdomen, due to

---

[6]Dr. White was no longer working at the Tarrant County Medical Examiner's Office at the time of the trial.

6

assault.[7] Dr. Roe testified that Soto's lacerated kidney was the result of an assault, was consistent with being kicked or being hit, and constituted serious bodily injury.

After hearing the above evidence, the jury found Appellant guilty of aggravated assault with a deadly weapon causing serious bodily injury as alleged in the indictment and proceeded to the punishment phase. After hearing evidence during the punishment phase and finding the habitual paragraphs in the indictment to be true, the jury assessed Appellant's punishment at twenty-five years' confinement, and the trial court sentenced him accordingly.

## III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant challenges the sufficiency of the evidence to support a finding that he had inflicted or had caused serious bodily injury to Soto.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the

---

[7]Dr. Roe noted that Soto suffered from cirrhosis and that Soto's "hospital admission blood" revealed a high ethanol level of 0.316 grams percent. Dr. Roe, however, ruled out cirrhosis and the high ethanol level as potential causes of Soto's death.

trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

### B. Law on Aggravated Assault with a Deadly Weapon

A person commits the offense of aggravated assault with a deadly weapon if he intentionally, knowingly, or recklessly causes serious bodily injury to another and uses or exhibits a deadly weapon—here, a hand or a foot—during the commission of the assault. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2014); § 22.02(a)(2) (West 2011); *see also id.* § 1.07(a)(17)(B) (West Supp. 2014) (defining "deadly weapon" as anything that in the manner of its use

8

is capable of causing death or serious bodily injury). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

### C. Analysis

Appellant concedes that his statements to police and Vasquez's testimony prove that he was involved in a physical altercation with Soto but argues that the severity of Soto's injuries does not correspond with the description of the fight given in Appellant's statements or in Vasquez's testimony. After hearing testimony concerning the external and internal injuries on Soto's body and after seeing pictures documenting the injuries, the jury heard testimony from both Detective Boetcher and Dr. Roe that the injuries Soto had suffered were consistent with being kicked or hit multiple times, which Appellant admitted to doing, and that the injuries constituted serious bodily injury.

Appellant further argues that Soto's injuries were likely inflicted in a subsequent altercation by the three attackers that Soto spoke of when he was being transported by Medstar. Other than this statement, however, the record contains no indication of a third fight in which Soto was injured by multiple attackers. Based on the timeline of events—the second fight occurred between 3:30 p.m. and 4:00 p.m., and the 911 call came in at 3:55 p.m.—the jury could have determined that there was little possibility that a third altercation had occurred. Furthermore, Appellant described Soto as his best friend in his written

9

statement, and Cantu testified that Appellant told her the day after the fights that he had killed his best friend.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime—that Appellant committed aggravated assault with a deadly weapon, either his hand or his foot, and caused serious bodily injury to Soto—beyond a reasonable doubt. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. We overrule Appellant's first issue.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant argues that he received ineffective assistance of counsel.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped.

*Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words,

11

appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

## B. Appellant Did Not Establish His Claims of Ineffectiveness

Here, Appellant complains that his trial counsel was ineffective because she failed to challenge the admissibility of his videotaped interview; Appellant argues that without his statement, there is no case. Appellant further complains that defense counsel failed to object to leading questions, failed to request a jury charge on self-defense or mutual combat, and allowed the deputy medical examiner to testify from the autopsy report.

Although Appellant filed a motion for new trial, he did not raise ineffective assistance of counsel in his motion, and no hearing was held on the motion. Consequently, any trial strategy that Appellant's trial attorney may have had for her challenged actions is not contained in the record. Generally, a silent record that provides no explanation for trial counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004), *cert. denied*, 543 U.S. 1059. Moreover,

12

our review of the record does not indicate that the alleged failures that Appellant complains of were "so outrageous that no competent attorney would have engaged in [them]." *Nava*, 415 S.W.3d at 308. *Compare Fuller v. State*, 224 S.W.3d 823, 836 (Tex. App.—Texarkana 2007, no pet.) (holding that trial counsel's conduct in allowing State unfettered and unchecked bolstering of victim was so outrageous that no competent attorney would have engaged in it), *with Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) (holding that trial counsel's failure to object to hearsay testimony that allegedly violated Confrontation Clause did not constitute ineffective assistance of counsel because his reasons for his actions did not appear in record and could have been part of reasonable trial strategy), *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (stating that "it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway" and holding that appellant had not established that the testimony sought in questioning was inadmissible or would not have otherwise come into evidence even if his trial counsel had objected, the trial court had sustained the objection, and the State had rephrased its questions), *Weiser v. State*, No. 14-02-01304-CR, 2003 WL 22996924, at *7 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to show that trial counsel was ineffective by not objecting to an allegedly inadmissible oral statement where record revealed that statement was voluntary and was not the product of interrogation), *and*

*Blakemore v. State*, No. 03-96-00362-CR, 1997 WL 705467, at *3 (Tex. App.—Austin Nov. 13, 1997, no pet.) (not designated for publication) (stating that it cannot be ineffective assistance of counsel to fail to request self-defense instruction to which defendant is not entitled). Based on the record before us, the strong presumption of reasonable assistance, and the absence of any explanation regarding trial counsel's strategy, we cannot say that Appellant has met his burden under the deficient-performance prong to show by a preponderance of the evidence that his trial counsel's alleged failures fell below the standard of prevailing professional norms or were "so outrageous that no competent attorney would have engaged in [them]." *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 308.

Furthermore, even if we could somehow construe the alleged deficiencies as meeting the deficient-performance prong of *Strickland*, Appellant has not shown a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. Excluding the complained-of videotaped statement, the medical examiner's testimony, and the testimony that came in as a result of the allegedly leading questions, the jury still had before it Appellant's voluntary written statement in which he admitted to punching and kicking Soto multiple times, Vasquez's testimony corroborating Appellant's statement, and Detective Boetcher's testimony that Soto's serious bodily injuries were the result of Appellant's punching and kicking him. And even if Appellant's

14

trial counsel had requested, and the trial court out of an abundance of caution had included, a self-defense instruction in the jury charge, the jury could not have found beyond a reasonable doubt that Appellant reasonably believed that force was immediately necessary to protect himself from Soto; the evidence showed that Appellant was the aggressor in the second fight. *See Nichols v. State*, No. 02-13-00566-CR, 2014 WL 7779272, at *6 (Tex. App.—Fort Worth Feb. 5, 2014, no pet.) (mem. op., not designated for publication) (stating that there was no evidence in the record that appellant possessed a reasonable belief that deadly force was necessary to protect against drug dealer's or anyone else's use of deadly force). Appellant therefore has not satisfied the prejudice-prong of *Strickland.* 466 U.S. at 687, 104 S. Ct. at 2064.

Because Appellant has not satisfied either prong of *Strickland*, we overrule his second issue. *See id.*

## V. Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 21, 2015