**AFFIRMED and Opinion Filed February 24, 2020**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-18-01448-CR

### ERMITANO RODRIGUEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82911-2016**

## MEMORANDUM OPINION
Before Justices Whitehill, Osborne, and Nowell
Opinion by Justice Osborne

Appellant, Ermitano Rodriguez, was convicted of aggravated sexual assault of a child and sentenced to forty-five years' imprisonment.[1] On appeal, appellant claims that (1) the evidence is legally insufficient to support his conviction and (2) the trial court erred by allowing the complainant to be asked leading questions. We affirm.

---

[1] Appellant was charged in a five count indictment with various offenses of continuous sexual abuse of a child, aggravated sexual assault of a child, and indecency with a child. A first trial ended with a jury unable to reach a verdict. Following a second trial, the jury returned a guilty verdict on the lesser included offense of aggravated sexual assault of a child under Count 1 of the indictment.

## Background

The complainant in this case, N.S., was twenty-one at the time of trial. The offenses with which appellant was charged occurred before she was fourteen years of age.

N.S. testified that, as a child, her family moved around quite a bit, particularly in the Plano area. She, along with her mother and brothers,[2] lived with appellant, whom she referred to as her stepfather, for a time when she was in the fifth to the seventh grades. The family lived for about a year in an apartment near a McDonald's where her mother worked; the family shared one bedroom. They later moved to an apartment near a Braum's where N.S. shared a second bedroom with her brother "J" who was around five years old.  It was during the school year[3] when the family lived near the McDonald's that "everything started."

The first assault occurred when her mother was working and not at home. N.S. was asleep in her bed when she felt something behind her. When she turned around appellant came towards her and "did something." N.S. testified that appellant "came on top" of her, put his body against hers, and started "doing some things." N.S. could feel appellant's chest and his "down part" which was touching her skin to skin on

---

[2] N.S.'s brothers were "J" and "F;" no last name was given for either. Appellant was "F's" biological father; that child was not born yet when they lived in the apartment by the McDonald's but was by the time they lived near the Braum's. By the time of trial she also had a third brother, "R;" again, no last name was given, but he was not appellant's biological child.

[3] N.S. testified that when she was in the fourth or fifth grade she went to summer school. Her memory of when this assault occurred was when she was "going to school normally."

her "private part" on the top of the two lips on her private part.[4] N.S. was screaming and trying to push appellant away. Appellant put his hand on the top of her mouth.

Eventually, appellant stopped, though N.S. could not recall how. N.S. grabbed her night clothes and ran to the living room where her younger brother "J" was watching television. She then went to the bathroom where she took a shower because she "felt dirty." Appellant told her not to tell her mother. N.S. testified that she did not tell anyone about this incident because she was scared.

The second assault happened when N.S. was living in the apartment by the Braum's. One morning she woke to find appellant on top of her. She described this incident as follows:

> When he came into our bedroom, mine and my brother's, he took my pants off and – same thing – got on my chest, turned me around, I believe, and he was on top of me. And I was pushing him away, because he was doing the same thing as the first time. And he put his hands on top of my mouth, and I guess I was moving kind of bad, and my brother woke up and saw me and him, and my brother was confused.

N.S. testified that she could feel appellant's "down part" on the same place, the lips of her private part, but "this time it went a little bit inside." It was not a good feeling. Appellant left the bedroom when her brother woke. N.S. cried, then put her pajama pants back on and went to bed.

_____

[4] N.S. was uncomfortable using words other than "private part" or "down part" to discuss genitalia. During the course of her testimony, N.S. never used the words "penis" or "vagina." She testified that the "down part" of a male is what men use to go to the restroom. As a female, N.S. had only one private part in the front, down part of her body; this was different from her chest or her "butt."

N.S. recounted what she considered to be a third attempted assault in yet a third apartment the family lived in. She was ironing her clothes and getting ready for school when she heard appellant trying to break into her locked bedroom. He was saying "Let me come in." N.S. said "no" and told appellant if he got close to her that she would burn herself with the iron. Appellant said "don't do it." N.S. told appellant to go away and leave her alone. He left the apartment.

After this third incident, N.S. went to school and told her counselor what had happened. She later told her grandfather, who got mad. Her grandfather got an apartment for N.S. to live in with her mother and brothers away from appellant. N.S. testified that she last saw appellant when she was twelve or thirteen and in the seventh grade. She had never been married to appellant.

N.S. also testified that she tried to talk to her mother but her mother would not pay any attention to her. Even after the school counselor came to her house and told her mother what was going on, her mother "still didn't care."

N.S. testified that she not like remembering these assaults or talking about them. It affected her when she married because she had wanted to be a virgin and "normal;" she did not want to feel "disgusted" with her body. Even though these assaults had occurred a long time ago, she was not going to forget them. She wanted to get counseling but had not been able to because she had to work every day to pay for her expenses. She also feared that counselors would judge her. Her mother had

said bad things to her, and she was afraid that others would say the same things to her.

The prosecution presented evidence that Child Protective Services began an investigation on appellant in October of 2010. The family was contacted in Fort Worth where they were living at the time. Both N.S. and her mother identified appellant from photographic lineups.

N.S. was interviewed at the Children's Advocacy Center in Fort Worth; she was thirteen years old at the time of her interview. N.S. was also referred to Cook Children's Hospital for a SANE exam.

Investigating detectives obtained N.S.'s school records from which they were able to determine what schools she attended in Plano and the home addresses shown in those records. The addresses of the apartments obtained from these records were all in the City of Plano in Collin County. After establishing that these assaults occurred at two apartments in Plano, the investigator subsequently made a report to the Plano Police Department. Based on the location of these apartments, and the time frame in which the parties lived there, it was determined that N.S. was assaulted by appellant between approximately the years 2006 and 2009 when she would have been between the ages of nine and twelve.

The detectives were also able to determine appellant's date of birth – December 20, 1983 – and that appellant was over the age of seventeen at the time the assaults occurred. Appellant was already out of the home during this

investigation. Investigators and detectives were unable to make contact with appellant.

A Plano detective was able to contact the original teacher from her middle school to whom N.S. had made outcry. The detective learned N.S. kept a journal that might be important to the investigation, but he was unable to obtain that journal or collect any type of physical evidence.

A grand jury referral was done on January 28, 2011. The police, however, were unable to locate appellant and the case was dormant for several years before appellant was arrested and finally brought to trial.

## 1. Sufficiency of the Evidence

Appellant claims that the evidence is insufficient to support his conviction for aggravated sexual assault of a child. Specifically, appellant claims that N.S. was not credible because she gave "vague" testimony and admitted that her memory was poor. Appellant further claims that, because there was no physical evidence or other testimonial evidence to "bolster" her claims, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The State responds that N.S. described two assaults in sufficient detail for the jury to believe her testimony. The State further responds that N.S.'s testimony was corroborated by the police investigation which showed the locations where she lived and who she initially informed of the assaults. We agree with the State.

***Standard of Review***

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackso*n, 443 U.S. at 313; *Brooks*, 323 S.W.3d at 899. The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackso*n, 443 U.S. at 319; *Brooks,* 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

*Testimony of the Complainant*

In order to convict appellant of aggravated sexual assault of a child under the indictment in this case, the jury was required to find that appellant intentionally or knowingly caused his sexual organ to contact the female sexual organ of N.S., a child under 14 years of age who was not then appellant's spouse. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii).

The testimony of a victim alone, even if that victim is a child, is sufficient to support a conviction for sexual assault of a child. *Revels v. State,* 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07(a). Corroboration of a child victim's testimony by medical or physical evidence is unnecessary. *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.)

Here, N.S. described two instances of sexual assault committed against her by appellant when she was under the age of fourteen. The jury believed N.S., as it was entitled to do. While her testimony was occasionally imprecise, particularly as to times and dates, that is not sufficient for us to find that the jury's verdict was irrational or without evidentiary support. *See Revels,* 334 S.W.3d at 52–53 (holding that the evidence was sufficient to sustain a conviction where the victim testified to facts of offense that happened eight years prior to trial, even though she did not remember certain details of other matters at the time and gave conflicting responses

on other matters). This is especially true because N.S. testified that, while she did not like remembering these assaults or talking about them, she was not going to forget them.

*Corroboration of Certain Facts*

While N.S.'s testimony did not require corroboration, the State presented corroborating evidence from the C.P.S. and police investigation which showed the locations where she lived, the schools she attended, and who she initially informed of the assaults. From this evidence the police were able to determine the time frame of the assaults, *i.e.*, between approximately the years 2006 and 2009. The police were also able to determine that N.S. was under the age of thirteen and appellant was over the age of seventeen at the time the assaults occurred.

We conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Therefore, the evidence is sufficient to uphold appellant's conviction for aggravated sexual assault of a child. We overrule appellant's first issue.

## 2. Leading Questions

Appellant claims that the trial court improperly allowed the prosecutor to ask N.S. leading questions on multiple occasions throughout her testimony on direct examination. The State responds that the trial court did not abuse its discretion by allowing the prosecutor to ask the complained-of questions because, when viewed

in context, those questions helped develop N.S.'s testimony. We agree with the State.

***Standard of Review for Leading Questions***

The Rules of Evidence generally prohibit leading questions on direct examination except where such questions may be necessary to develop the witness's testimony. TEX. R. EVID. 611(c). Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back to the prosecutor. *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Newsome v. State*, 829 S.W.2d 260, 269 (Tex. App.—Dallas 1992, no pet.). The mere fact that a question may be answered by a simple "yes" or "no" does not render it an impermissibly leading question. *Newsome*, 829 S.W.2d at 269. It is only when the question suggests which answer is desired, "yes" or "no," that it becomes a leading question. *Id*.

We review a trial court's decision to allow a prosecutor to lead a State's witnesses for abuse of discretion. *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982); *see also Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000) (noting that while the rules generally prohibit leading questions "some leading questions are acceptable at the trial court's discretion"). Abuse of discretion cannot usually be shown unless a defendant can demonstrate that he was unduly prejudiced by virtue of such questions. *Wyatt*, 23 S.W.3d at 28; *Hernandez*, 643 S.W.2d at 400).

### *Questions, Answers and the Trial Court's Ruling*

The record reflects that appellant objected multiple times on grounds that the prosecutor was leading N.S. Five of these objections were sustained and the others were overruled. On appeal, appellant complains of only two instances[5] during N.S.'s testimony where the trial court overruled appellant's objections that the prosecutor was leading the witness. Neither instance requires us to reverse this conviction.

### *1. Clarification of Body Parts*

Appellant complains of the following question, answer and the trial court's ruling:

> Q. [BY THE PROSECUTOR] Where was his down part on your body?
>
> A. I guess just top of it.
>
> Q. Top of what?
>
> A. My private part.
>
> Q. When you say the top of it, tell me what you mean.

---

[5] The State addresses a third instance where appellant's leading objection to testimony was overruled:

> Q. [BY THE PROSECUTOR] So if you were born July 23, 1997, when you turned one, would you agree that that year would have been July 23rd of 1998?
>
> A. Yes.
>
> Q. All right.
>
> [DEFENSE COUNSEL] Your Honor, I am going to object to the leading nature of these questions.
>
> THE COURT: Overruled.

In his brief to this Court, however, appellant does not complain of this question, answer or ruling.

A. Like, you can say, it was touching skin to skin.

Q. Do you know how, down there on the private part of a girl, how you have two lips?

A. Yeah.

Q. And then you have some hair above that?

A. Um-hmm.

Q. Is that a "yes"?

A. Yes.

[BY DEFENSE COUNSEL] Objection as to leading, Your Honor. She's been asked a question, and we're having an absolutely leading question about the specificity.

THE COURT: Overruled.

After the objection was overruled, the prosecutor asked N.S. where on her private part appellant's "down part" touched her. N.S. replied, without objection: "It was, like, the top of the lips."

The first count of the multi-count indictment against appellant alleged the offense of continuous sexual abuse of a child; one of the acts of sexual abuse alleged in this count included aggravated sexual assault by causing N.S.'s female sexual organ to contact appellant's male sexual organ. This part of the indictment required the State to prove that N.S.'s female sexual organ was contacted by appellant's male sexual organ.

As noted above, N.S. was very uncomfortable discussing both the male and female genitalia and never used the words "penis" or "vagina" during her testimony. The prosecutor's question was obviously designed to establish that appellant's male sexual organ contacted N.S.'s female sexual organ. *See Rodriguez v. State*, 997 S.W.2d 640, 642–43 (Tex. App.—Corpus Christi–Edinburg 1999, no pet) (holding there was no abuse of discretion where the trial court allowed leading questions regarding body parts and penetration); *Timlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd) (holding there was no abuse of discretion where the trial court allowed leading questions as to which particular part of the complainant's anatomy was licked by the defendant). Given the nature of N.S.'s testimony, the trial court did not abuse its discretion by allowing the prosecutor to clarify the body parts involved in the sexual assault.

### 2. *The Complainant's Fear of Appellant*

Appellant complains of the following question, answer, and the trial court's ruling:

Q. [BY THE PROSECUTOR] Why didn't you tell your mom?

A. I was scared.

Q. What were you scared of?

A. Of me, my mom, my brother, of, like, where we're going to live.

Q. Why were you scared of that?

A. I didn't want me and my brother to be separated with my mom or something.

Q. Were you scared of anything else if you told your mom?

[BY DEFENSE COUNSEL] Objection to leading again, Your Honor.

THE COURT: Overruled.

THE WITNESS: I was scared that if he was going to do me something wrong.

Q. (BY THE PROSECUTOR) What do you mean?

A. As in killing me or my brother or my mom.

The prosecutor's question did not suggest an answer or attempt to put words in N.S.'s mouth to be "echoed back." The question merely focused N.S.'s testimony on a new subject, *i.e.*, that she was scared of something else bad happening. As a result, the question was not a leading question.

Additionally, even if the question could be considered leading, N.S. had already testified, over a hearsay objection, that appellant told her not to tell her mother. She had also already testified that she was too scared to tell anyone what happened. Because the evidence of N.S.'s fear of appellant and of telling someone what happened was already before the jury, there is no error. *See Newsome*, 829 S.W.2d at 270 (citing *Hernandez*, 643 S.W.2d at 400–01) (holding that no prejudice was shown when the testimony elicited by the complained-of leading questions had already been presented to the jury without recourse to leading questions); *Myers v.*

*State*, 781 S.W.2d 730, 733 (Tex. App.—Fort Worth 1989, pet. ref'd) (holding that leading questions were not prejudicial because, to the extent they elicited any information for the first time, they merely clarified prior testimony).

### *No Harm is Shown*

Even if we were to find that the trial court erred by overruling either of these objections, we would not find reversible error because appellant has not shown that he was unduly prejudiced by these questions. Appellant avers only that the questions were "intentionally prejudicial" and prevented him from receiving a fair trial; he fails to provide any specifics as to precisely how he was harmed.

Further, we fail to perceive that the prosecutor was asking these questions in an effort to suggest answers to N.S. or put words in her mouth. On cross-examination, N.S. was questioned by defense counsel about whether the prosecutor had helped her in her testimony:

> [BY DEFENSE COUNSEL] And I noticed that you had some difficulty answering some of the District Attorney's questions?
>
> A. Yes.
>
> Q. Is it true that she was helping you answer those questions?
>
> A. No. I was answering that I remember. She never – she was just there, you know, to help me out.
>
> Q. Right, to help you out.

On re-direct examination, the prosecutor established that she had not told N.S. how to testify:

Q. [BY THE PROSECUTOR] You mentioned – or you were asked some questions about me being here to help you and things such as that. What have I told you that your only job is?

A. To tell the truth.

Q. Have I ever told you what to say?

A. No, ma'am.

It is clear from this testimony that the prosecutor was not suggesting answers to any questions and that N.S. was testifying from her own memory, in her own words, and of her own accord.

Further, the trial court was actively engaged in the process to ensure that the testimony was the witness's rather than her adoption of the prosecutor's questions. This is reflected in the fact that the trial court sustained five of appellant's leading objections. The trial court was, in fact, carefully exercising its discretion.

We conclude that the trial court did not abuse its discretion by overruling the complained-of objections to the prosecutor's questions. We overrule appellant's second issue.

## Conclusion

The trial court's judgment is affirmed.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)
181448F.U05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERMITANO RODRIGUEZ,
Appellant

No. 05-18-01448-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-82911-2016.
Opinion delivered by Justice
Osborne. Justices Whitehill and
Nowell participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered February 24, 2020.