

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00176-CR

_____

DENNIS EUGENE ALLEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01916

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A jury convicted Dennis Eugene Allen of aggravated sexual assault of his minor daughter, K.A. After entering a plea of true to the State's enhancement allegation, Allen was sentenced to fifteen years' imprisonment.[1] On appeal, Allen argues (1) that the evidence was legally insufficient to support his conviction, (2) that the trial court erred in concluding Rebecca Peavy, the Executive Director of The Children's Advocacy Center of Paris (CAC), was the proper outcry witness, and (3) that the trial court erred in allowing Peavy to remain in the courtroom during the testimony of the State's key witnesses.[2]

We find that the evidence was legally sufficient to support Allen's conviction and that Peavy was the proper outcry witness in this case. We find, however, that the trial court erred in allowing Peavy to remain in the courtroom to hear the testimony of the State's other witnesses, but conclude that error was harmless. Therefore, we affirm the trial court's judgment.

## I.      The Evidence Was Legally Sufficient to Support the Jury's Verdict

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Allen committed the offense of aggravated sexual assault. *See*

---

[1] In this case, the State alleged that Allen intentionally or knowingly caused K.A.'s sexual organ to contact his mouth on or about October 8, 2008. Allen also appeals three other convictions of aggravated sexual assault against K.A. In cause number 06-13-00173-CR, Allen was convicted of intentionally or knowingly penetrating K.A.'s sexual organ with his finger on or about May 13, 2012. In cause number 06-13-00174-CR, Allen was convicted of intentionally or knowingly causing K.A.'s sexual organ to contact his mouth on or about May 13, 2012. In cause number 06-13-00175-CR, Allen was convicted of intentionally or knowingly penetrating K.A.'s sexual organ with his finger on or about October 8, 2008.

[2] Allen also argued that the trial court improperly allowed irrelevant testimony about a case study involving pregnant teenagers. We resolved this issue in our opinion in cause number 06-13-00173-CR.

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J, concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Here, the indictment alleged that, on or about October 8, 2008, Allen intentionally or knowingly caused K.A.'s sexual organ to contact his mouth. A defendant commits aggravated sexual assault of a child if he intentionally or knowingly causes the sexual organ of a child to contact or penetrate his mouth. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B) (West Supp. 2013).

During the trial conducted in July 2013, twelve-year-old K.A.[3] testified that Allen had sexually abused her many times, beginning in the second grade. K.A. testified that she lived in an apartment complex with Allen in Bogota, Texas, when she was in the second grade. After describing a 2012 incident of sexual abuse involving Allen's digital penetration of K.A.'s vagina, the State engaged K.A. in the following line of questioning:

> Q.     [K.A.], is that the first time he's ever done anything like that?
>
> A.     No ma'am . . . .
>
> Q.     Was that the first time that he's ever done anything like that, the first time he's ever messed with you?
>
> A.     He has done it more.
>
> . . . .
>
> Q.     Did it happen when you were living in those red-looking apartments? . . . . Did things like this happen when you were living in those red apartments . . . ?
>
> A.     Yes.

While K.A. testified that digital penetration of her vagina occurred in the Bogota apartments more than once, K.A. did not testify at trial that Allen had caused her sexual organ to contact his mouth in the Bogota apartments.

On May 20, 2012, K.A. made an outcry of sexual abuse to her aunt, Valerie Williams, shortly after she was placed on top of a washer and dryer by Allen and sexually assaulted.[4] At trial, K.A. testified, "I told my Aunt Valerie that my dad had been doing nasty stuff to me . . .

---

[3]K.A. testified that she was born March 14, 2001.

[4]At trial, K.A. also testified about instances of sexual abuse occurring on May 13, 2012.

4

[and] I also said he puts his tongue where I pee." After Williams reported K.A.'s allegations, K.A. was taken to the CAC to undergo a forensic interview conducted by Peavy. During this interview, K.A. reported this incident as well as several other instances of abuse to Peavy.

Peavy testified,

[K.A.] told me that there was an apartment that was in Bogota and she was scared to sleep by herself so she would sleep with her dad and would wake up to his fingers -- and she would kind of make this wiggling-finger motion when she said that. And he once did it with his tongue. . . . She talked about how he had his fingers on her and he was telling her how he could use his tongue on her.

The following cross-examination occurred during Peavy's testimony:

Q.    . . . [A]ccording to your notes [K.A.] told you that [Allen] put his tongue where [she] pee[s], once . . . .
          [T]he other situation that she told you about during the CAC interview was a situation on the washer and dryer, isn't that true?

. . . .

A.    She told me about the washer and dryer. She told me about a time where she was 10[5] and [her step-brother] was at his dad's house and she was asleep and [Allen] woke her up and he put his head and his tongue down there and started moving his tongue around where she pees. So, yes, she's told me about more than one instance.[6]

Peavy also testified that K.A.'s trial testimony was, at times, inconsistent with the information she provided during her CAC interview. Peavy further testified that K.A. discussed additional instances of abuse during her trial testimony that were not mentioned during the CAC interview

---

[5]The offenses alleged in this case occurred when K.A. was five or six years old.

[6]Peavy's testimony on cross-examination did not necessarily contradict her direct testimony. Peavy stated that K.A. told her of more than one instance in which Allen caused K.A.'s sexual organ to contact his mouth and described two instances where this happened. Peavy did not testify that the washer and dryer incident and the incident that occurred when K.A. was ten were the only incidents that K.A. discussed in which Allen's mouth came in contact with her sexual organ.

5

and that there were inconsistencies in K.A.'s recollection of details, such as the type of clothing that she was wearing during the incidents.

Dr. Matthew Cox, a pediatrician at the University of Texas Southwestern Medical School in Dallas examined K.A. on May 31, 2012, but found no trauma or physical evidence of sexual abuse. Cox testified at trial that a lack of physical trauma was not uncommon among the victims of sexual abuse that he examined. Cox explained that penetration could occur without tearing of vaginal tissues and that any bruising or physical signs of sexual abuse might have already healed.

Allen took the stand in his own defense and testified that he was never alone with K.A. and that he never sexually assaulted her. Allen claimed that, after he put a new roof on the apartments and completed other odd jobs, the owner of the apartment complex offered him an apartment. Allen stated that he was the only person on the lease and testified that he did not live in the apartment. Allen's wife, Jeanette Allen, testified that no one really lived at the apartment because it had never been fully furnished and that Allen stayed with her in her house. Although Jeanette testified that Allen might have spent one or two nights at the apartment, she did not recall whether K.A. spent any nights there.

Cathy Williams, the owner of the apartment complex, testified that she rented the apartment to Allen on October 8, 2008, and that Allen rented the apartment for himself and for K.A. Cathy testified, "[K.A.] was in and out of the apartment continuously."

Pointing to (1) inconsistencies in the record, (2) Cox's testimony that he found no physical evidence of sexual abuse, and (3) the testimony of his wife, Allen argues that the evidence was legally insufficient to support his conviction. However, the testimony Allen

6

highlights merely created fact and credibility issues which the jury resolved prior to entering its verdict.[7]

K.A. testified that she was sexually assaulted in the Bogota apartments. Peavy testified that K.A. told her Allen digitally penetrated her while she was in the Bogota apartment and that "he once did it with his tongue." "When the jury convicted [Allen], it expressed its view that the outcry testimony was probative" of the ultimate issue before it. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Peavy's outcry testimony offered during her direct examination was, therefore, legally sufficient to support the jury's verdict. *See id.*; *Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pets. (8) ref'd) ("Outcry testimony alone can be legally sufficient evidence to support a conviction.").

Here, Peavy's testimony established that Allen intentionally or knowingly caused K.A.'s sexual organ to contact his mouth on or about October 8, 2008, as alleged in the indictment. Viewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient to support Allen's conviction for aggravated sexual assault. We overrule Allen's first point of error.

## II.    Peavy Was the Proper Outcry Witness in this Case

Hearsay is not admissible at trial except as provided by statute or by the Texas Rules of Evidence. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (per curiam). Article 38.072 of the Texas Code of Criminal Procedure establishes an exception to the hearsay rule, applicable in proceedings for prosecution of sexual offenses, for a child-victim's statements

---

[7]The trier of fact may believe all, some, or none of a witness' testimony because the fact-finder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

describing the offense made "to the first person, 18 years of age or older, other than the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West Supp. 2013).

During a pretrial hearing, Allen challenged the State's designation of Peavy as the outcry witness. At the hearing, Peavy testified that K.A. indicated "that she was the victim of oral sexual abuse" during the forensic interview. K.A. testified that she first told Williams that Allen had been "doing nasty things" including "put[ting] his tongue where I pee." Williams' affidavit, drafted on the day of Peavy's forensic interview with K.A., documented K.A.'s outcry. Williams averred that K.A. said Allen sexually abused her "all the time" and that the last time she was sexually assaulted by Allen was on May 13, 2012, in her house. After agreeing with the State's assertion that Peavy's testimony was reliable, the trial court overruled Allen's objection to the designation and utilization of Peavy as the outcry witness.

We review a trial court's decision to admit an outcry statement under an abuse of discretion standard. *Owens v. State*, 381 S.W.3d 696, 703 (Tex. App.—Texarkana 2012, no pet.) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (citing *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd)). Because there is no discretion in determining the applicable law, the trial court abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

To be admissible under Article 38.072 of the Texas Code of Criminal Procedure, outcry testimony must be elicited from the first adult to whom the outcry is made. *Lopez v. State*, 343

S.W.3d 137, 140 (Tex. Crim. App. 2011); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). Admissible outcry testimony is not person-specific, but event-specific. *Broderick*, 35 S.W.3d at 73. To be a proper outcry, the child's statement to the witness must describe the alleged offense, or an element of the offense, in some discernible manner and must be more than a general allusion to sexual abuse. *Lopez*, 343 S.W.3d at 140; *Broderick*, 35 S.W.3d at 73 (citing *Thomas v. State*, 1 S.W.3d 138, 140–41 (Tex. App.—Texarkana 1999, pet. ref'd)).

On appeal, the State argues that K.A.'s statements to Williams were not an outcry because they amounted to nothing more than a general allusion to sexual abuse. K.A. told Williams that Allen "put[] his tongue where I pee," and claimed Allen had sexually assaulted her more than once. However, K.A. testified that she was sexually assaulted by Allen over a long period of time in many different places.

In cases where a child has been victim to more than one instance of sexual assault, it is possible to have more than one proper outcry witness. *Broderick*, 35 S.W.3d at 73. But before more than one outcry witness may testify, it must be determined that each outcry concerned different events or offenses and was not simply a repetition of the same event told to different individuals. *Id.* According to Williams' affidavit, K.A. only told Williams that she had been sexually assaulted in Allen's wife's home, in Allen's truck, and at her great-grandmother's house. K.A. did not tell Williams that she had been sexually assaulted in the Bogota apartments. K.A. testified, "I told [Peavy] more than I told my aunt."

9

Because the record established that K.A. told Peavy—not her aunt—about the sexual acts that occurred while K.A. was in the Bogota apartments, we cannot say that the trial court abused its discretion in concluding that Peavy was the proper outcry witness in this case. Allen's second point of error is overruled.

## III. The Trial Court's Error in Allowing Peavy to Remain in the Courtroom Was Harmless

In our opinion in one of Allen's companion cases, cause number 06-13-00173-CR, we determined that the trial court's decision to allow Peavy to remain in the courtroom was erroneous. Adopting the reasoning and holding from that opinion, we reach that same conclusion here and now determine whether the trial court's error was harmful.

A "'violation of an evidentiary rule . . . is non-constitutional [error] . . . and will be disregarded unless it affected the appellant's substantial rights.'" *Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.—Texarkana 2009, pet. ref'd) (quoting *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005)). Thus, "we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect." *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999); *see* TEX. R. APP. P. 44.2(b).

Prior to cross-examining K.A., Allen's counsel attempted to explain the harm in allowing Peavy to remain in the courtroom in the following colloquy:

> [N]ow the Court has heard testimony from the child on direct. The child, quite,
> [sic] obviously has brought up different events, other events, changed some things
> and so forth. That's for me to take up on my cross-examination; I understand
> that. My problem is -- this goes back to Rebecca Peavy, who is now, you know,

10

going to be our outcry witness. The Court has heard -- and also has been allowed to sit in the courtroom, over my objection to be excluded from the rule. . . .

Considering the fact that the child's testimony now is drastically different -- and what the outcry has been, I'm . . . about to cross her and explore facts and circumstances of why that story has changed.

I think I'm greatly disadvantaged by Mrs. Peavy, who heard the initial outcry and is prepared to testify under one certain way, but now she's benefitting from this additional information and is going to be preparing herself for my cross-examination of her.

Rule 614 of the Texas Rules of Evidence, the witness sequestration rule, "prevents corroboration, contradiction, and the influencing of witnesses." *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.). In deciding whether the error of allowing Peavy to remain in the courtroom was harmful, we consider (1) whether Peavy actually heard the testimony of other witnesses, and (2) whether her testimony either contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness she heard. *See Bryant*, 282 S.W.3d at 161–62 (citing *Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989); *Wilson v. State*, 179 S.W.3d 240, 249 (Tex. App.—Texarkana 2005, no pet.)); *Cooks v. State*, 844 S.W.2d 697, 733 (Tex. Crim. App. 1992), *superseded on other grounds as stated in Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013); *White*, 958 S.W.2d at 465. The appellant has the burden to demonstrate that the record supports a finding under both prongs. *Bryant*, 282 S.W.3d at 162. If both of these criteria are met, the court's decision to exempt Peavy from the Rule most likely resulted in harm. *See Ladd*, 3 S.W.3d at 566; *Cooks*, 844 S.W.3d at 733; *Chisum v. State*, 988 S.W.2d 244, 251 (Tex. App.—Texarkana 1998, pet. ref'd); *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.). However, the main "question in

11

assessing the harm of allowing [Peavy] to remain in the courtroom is whether [s]he was influenced in h[er] testimony by the testimony [s]he heard." *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005).

Peavy testified after hearing K.A. and Cox testify. Peavy was finally excused at the conclusion of her testimony and did not hear the testimony of the defense witnesses prior to taking the stand. K.A. did not testify that Allen caused his mouth to contact her sexual organ in the Bogota apartments. Therefore, Peavy's testimony did not corroborate K.A.'s trial testimony. Peavy also stated that there were inconsistencies in K.A.'s testimony related to other sexual offenses that could have been the result of the late hour and length of the CAC interview.

Here, after reviewing the entire record, we have fair assurance that the error either had no influence on the jury's deliberations or had such a slight effect that it was imperceptible. First, Peavy's testimony did not corroborate K.A.'s testimony since K.A. did not testify about the act that formed the basis of the State's indictment in this case. Second, the State provided Allen with pretrial notice that Peavy would testify that K.A. told her (1) "'[Allen] messed with me with his fingers and did other stuff'" and (2) that she had been suffering Allen's sexual abuse since she was five or six years old. Third, testifying favorably to Allen, Peavy admitted that it was possible that K.A. was lying due to the inconsistencies between her CAC interview and her trial testimony. Allen's counsel emphasized this point during closing argument, leaving the jury to struggle with the issue of K.A.'s credibility. Fourth, Allen's counsel, who was previously provided with and had reviewed a copy of the CAC interview, failed to even suggest that

12

Peavy's testimony was inconsistent with the child's CAC interview. Peavy merely recalled the statements that K.A. made during the CAC interview.

In light of the entire record, we cannot say that Peavy "was influenced in h[er] testimony by the testimony [s]he heard." *See id.* We find the trial court's error in exempting Peavy from the witness sequestration rule harmless. Allen's last point of error is overruled.

## IV. Conclusion

The trial court's judgment is affirmed.


                                        Jack Carter
                                        Justice


Date Submitted:     May 5, 2014
Date Decided:       June 13, 2014

Do Not Publish