# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00136-CR

**Terri Elmore-Munoz, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
## NO. D-1-DC-12-500099, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Terri Elmore-Munoz guilty of two counts of intoxication manslaughter and assessed as punishment two four-year terms of imprisonment to be served consecutively. She complains that the trial court erred at the guilt-innocence phase by permitting the State's toxicology expert to be in the courtroom while an emergency-room doctor testified, by admitting a chart comparing alcohol content of various beverages, and by overruling her objection to the testimony of a police detective as an expert on detecting intoxication. Appellant asserts that the trial court erred at the punishment phase by limiting the testimony of a clinical social worker and forcing appellant to redact passages from the social worker's report that appellant deems pertinent. We will affirm the judgment.

## BACKGROUND

Appellant concedes that evidence shows that over the course of less than three hours, she consumed at least three beers at a restaurant, then drove away. She concedes that evidence

shows that she crossed the center stripe of a highway and collided head-on with an oncoming vehicle. The two occupants of that vehicle died. Testing of appellant's blood sample drawn after the crash revealed a blood-alcohol content of .20 grams per 100 milliliters.

## STANDARD OF REVIEW

Because appellant does not assert that the alleged errors in the admission or exclusion of evidence affected her constitutional rights, we must disregard any error that did not affect her substantial rights. *See* Tex. R. App. P. 44.2. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction should not be overturned for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In assessing whether appellant was harmed by the admission of evidence, we consider the entire record. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We consider testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, the State's theory, the defensive theory, and closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Overwhelming evidence of guilt is one factor in our harm analysis. *Id.* at 356-58. The burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either the appellant or the State. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001).

**ANALYSIS**

Appellant asserts errors surrounding the admission of evidence, but has not shown that the errors affected her substantial rights.

**Letting an expert hear another witness's testimony**

Appellant asserts that the trial court erred by allowing the State's toxicology expert to remain in the courtroom while an emergency-room doctor testified about events in the emergency room, which included drawing the blood sample used to assess appellant's blood-alcohol level. The rule was invoked requiring that witnesses not listen to each other's testimony. *See* Tex. R. Evid. 614. The trial court, however, was persuaded by the State's argument that the toxicology expert needed to hear the emergency-room doctor's testimony to assess how to properly calculate appellant's blood-alcohol content from the tests run on serum in the emergency room. *See* Tex. R. Evid. 614(c); *see also Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 119-20 (Tex. 1999) (cited in criminal case *Allen v. State*, 436 S.W.3d 815, 823 (Tex. App.—Texarkana 2014, pet. ref'd)). Even if the trial court erred by allowing the expert to remain in the courtroom, the record must not only show that the expert improperly heard the doctor's testimony but must also show harm to appellant because the expert's testimony contradicted, corroborated, or was influenced by the doctor's testimony. *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005); *Webb v. State*, 766 S.W.2d 236, 239-40 (Tex. Crim. App. 1989).

Without resolving whether the trial court erred, we conclude that the record does not show that appellant was harmed. The expert converted the ER doctor's figure for the alcohol content of appellant's serum into the blood-alcohol content terms relevant under the penal code, but the information needed for that calculation was available in written records, not just in the

3

doctor's testimony. It is not apparent how the doctor's testimony about the ER procedures otherwise intersected or in any way affected the expert's testimony. The record does not show that permitting the expert to hear the ER doctor's testimony had any effect on the expert's testimony or on appellant's substantial rights.

**Allowing the beverage chart**

Appellant contends that the trial court erred by allowing the State to use a demonstrative exhibit comparing the alcohol content of various beverages. State's Exhibit 28 showed that four 16-ounce glasses of the ale that appellant drank had the equivalent of 7.85 "standard" drinks, then illustrated what a "standard" drink was, using a 1.5-ounce mixed drink, a 5-ounce glass of wine, and a 12-ounce beer. Appellant objected that the exhibit was inconsistent with the bartender's testimony that, although the glasses can hold sixteen ounces, they generally only contain fourteen or fifteen ounces. She asserts that the exhibit is based only on the number of drinks she paid for but is not supported by testimony regarding the amount she actually consumed and that it does not account for testimony that she drank only two-thirds of the fourth beer. She argues on appeal that the chart was inaccurate and, therefore, irrelevant to any issue the jury had to decide.

The trial court did not abuse its discretion by allowing the State to use Exhibit 28. The exhibit tracked the testimony of the State's expert witness concerning the statistical impact of the higher alcohol content of the ale appellant drank compared to a "standard" drink. The testimony that the glasses appellant was served were not completely full and that appellant did not finish her last beverage do not render the equations shown on the chart inaccurate concerning the properties of the relevant ale. The alcohol content of the ale is relevant to assess appellant's level of intoxication and that probative value is not substantially outweighed by the risk of confusion

4

from the alleged fact that the chart overstated the amount of ale appellant drank. *See* Tex. R. Evid. 404, 405. To the extent that it overstated the amount she drank, that was an aspect of the expert's testimony that was illuminated through cross-examination.

Even if the trial court erred by admitting this exhibit, the record does not show harm. The more powerful evidence of intoxication is the test showing that appellant's blood-alcohol content was 2.5 times the legal limit. Appellant does not argue that the blood-alcohol test results were admitted as a consequence of Exhibit 28 or that the exhibit bears in any way on those results. The blood-alcohol test—coupled with the evidence that while appellant was intoxicated she drove a motor vehicle across a center turn lane on a public road and crashed into an oncoming vehicle without swerving, killing the occupants of that vehicle—provided overwhelming evidence supporting the conviction for intoxication manslaughter.

**Allowing a detective to testify generally about the signs of intoxication**

Appellant contends that the trial court abused its discretion by overruling her Rule 702 objection to the testimony of Austin Police Department Detective Richard Mabe. *See* Tex. R. Evid. 702. The rule permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise if the expert's knowledge will help the trier of fact to understand the evidence or determine a fact in issue. *Id.*; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The witness must possess more knowledge than the average person "but the gap need not necessarily be monumental." *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010).

The parties examined Mabe outside the presence of the jury to establish his expertise and the nature of his testimony. There was not a standard offer/object/rule process regarding those

5

general issues. Instead, as the voir dire examination progressed, the court discussed the contours of its ruling. The court held that Mabe was qualified as an expert on the effects of intoxication on drivers in general, but could not testify about appellant's actual condition because he had not investigated this case particularly. During Mabe's actual testimony, appellant objected to Mabe discussing horizontal gaze nystagmus—lack of smoothness in eye movement—when he was not a physician. The court overruled the objection, and Mabe testified that the jerking of the eyes would interfere with vision when a driver looked somewhere other than straight ahead. Appellant later objected to Mabe testifying that HGN-related impairment and a tendency for drivers to be attracted to lights sometimes caused intoxicated people to drive into police cars parked on the side of the road with lights flashing. The court warned the State not to exceed that limited scope of inquiry and stray into more appellant-specific topics.

On appeal, appellant contends that Mabe did not provide information during the gatekeeping hearing about "why he felt he was qualified to render an opinion about the driving in the instant case without having seen the driving and the accident." As the trial court did not qualify him as an expert on the appellant's driving, it did not err. Appellant does not point to any place in the record where Mabe rendered such an opinion in front of the jury. Instead, Mabe told the jury that he did not investigate this crash or conduct sobriety tests on appellant. He testified generally about the effects of alcohol on vision, including HGN and slow glare-recovery. The closest he came to commenting on appellant specifically was his opinion that someone with a .20 blood-alcohol content would be impaired including with HGN.

On appeal, appellant also complains that Mabe did not disclose his methodology for determining the effect of alcohol on appellant's vision. We do not find where appellant preserved

6

this objection for review on appeal. Nor do we find where Mabe testified that appellant exhibited any particular impairment beyond his global assertion that someone with a .20 blood-alcohol content would be impaired. Again, he testified that he did not examine appellant. He testified from his training and experience about how intoxication affects drivers, but he never stated that appellant drove in any particular way. If appellant preserved this error for review, it still is not clear how Mabe was required and failed to describe and use a methodology. Appellant has not shown error.

Even if appellant preserved error and showed an abuse of discretion in the admission of Mabe's testimony, we conclude that the record does not show harm. The offense of intoxication manslaughter does not require that a person exhibit any particular symptom of intoxication, only that the person be intoxicated and, by reason of that intoxication, drive a car in a way that kills people. Tex. Penal Code § 49.08. Her .20 blood-alcohol content was more than sufficient to show intoxication. *See id*. § 49.01(2)(B) ("'Intoxicated' means . . . having an alcohol concentration of 0.08 or more.").

**Limiting the defense's evidence**

Appellant contends that the trial court erred by limiting clinical social worker Mary Boone's testimony and requiring redaction of her report. The fact that a piece of evidence was wrongfully excluded from the jury's consideration is not sufficient to warrant reversal of a conviction unless the exclusion had a "substantial and injurious effect or influence in determining the jury's verdict." *Morales*, 32 S.W.3d at 867.

Boone assessed appellant to determine if she was "subject to alcohol dependence" and recommended that she submit to outpatient treatment. The State objected to admission of Boone's Assessment Report on grounds that it was rife with hearsay. Appellant responded that the

7

out-of-court statements contained in the report were excepted from exclusion as hearsay because they were made for the purposes of a medical diagnosis. *See* Tex. R. Evid. 803(4). The State replied that the diagnosis exception applied only to the accused and/or the patient of the medical professional. The trial court admitted those parts of the report with information either obtained from appellant or generated by Boone, but sustained the objection to information gleaned from other parties whom Boone was not treating. Appellant redacted Boone's report to comply and limited her examination of Boone accordingly.

In order to preserve an exclusion of evidence for appellate review the appellant must make an offer of proof or a bill of exceptions demonstrating what the excluded evidence and testimony would have been. Tex. R. Evid. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Boone testified that the report contained the results of her tests on appellant as well as summaries of statements made by appellant and eight other persons. Appellant makes general assertions about the source and nature of the excluded evidence, but the record does not contain a copy of the full report, a bill of the excluded testimony, or even a description of the testimony. Absent that, we cannot assess whether the redacted statements fit the exception and thus whether the trial court abused its discretion by excluding the evidence, and we certainly cannot conclude that the exclusion affected appellant's substantial rights, as we must in order to reverse for such an error. *See* Tex. R. App. P. 44.2(b).

Even if appellant preserved error, and assuming without deciding that the trial court abused its discretion by excluding the evidence, we are not persuaded that she was harmed by its exclusion. This ruling occurred at the punishment phase after appellant had been found guilty of two counts of intoxication manslaughter. Boone was allowed to present her conclusion

8

that appellant did not meet the criteria for alcohol dependence, and appellant's friends and husband testified at the punishment hearing. The State presented evidence that appellant violated her pretrial bond while awaiting trial by drinking alcohol and attempting to start her vehicle. The jury, considering a range of punishment from two to twenty years in prison for each offense, assessed sentences of four years in prison for each offense. These sentences near the low end of the two-to-twenty-year punishment range indicate that appellant was not harmed by exclusion of the evidence.

## CONCLUSION

Having found no error, we affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: January 7, 2016

Do Not Publish