

## NUMBER 13-17-00045-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JOSEPH JAY SKIBA,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 264th District Court of Bell County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Chief Justice Valdez**

A jury convicted appellant Joseph Jay Skiba of aggravated sexual assault, a first-degree felony.  *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2017 1st C.S.).  The trial court assessed punishment at thirty years in prison.  By six issues, which we construe as four, Skiba contends that the trial court erred by admitting improper:  (1)

"outcry" testimony; (2) bolstering testimony; (3) speculation and hearsay testimony; and (4) leading questions. We affirm.

## I. BACKGROUND[1]

At trial, Officer Thomas Young from the Killeen Police Department testified that on February 1, 2011, he responded to a call related to domestic disturbance with a weapon. When he arrived, he questioned two then-teenaged-girls K.K.,[2] Skiba's biological daughter, and K.L., Skiba's adopted daughter. K.L. called 911 because Skiba was enraged that K.K. had been seeing her boyfriend, and Skiba began yelling, threatening to kill both K.K., K.L, K.L.'s grandfather, and his dog. K.L. made an audio recording of the threats and played it for Officer Young. According to Officer Young, K.L. was distraught, frightened, and angry. Officer Young then contacted Stephanie Largent, who worked for K.L.'s grandfather, and asked her to pick up the girls. K.L. asked K.K. to give her side of the story, but K.K. did not want to speak. While K.K. was walking away, K.L. told K.K., "You can stay here and get raped if you want to. I'm not going to do it."

Officer Young then notified Texas Department of Family and Protective Services (CPS) and detectives of the situation. K.K. told Officer Young that when she was removed from her abusive mother and placed with Skiba, Skiba began touching her inappropriately. When she turned eleven, Skiba bent her over a couch and penetrated her vagina with his penis, and he forced her to perform oral sex on him. She said that

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

[2] We use K.K. as an alias to protect the minor's identity. *See* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.")

various types of sexual assaults including vaginal, oral, and anal had continued with great frequency thereafter and that the most recent sexual assault by Skiba had occurred just two or three days before. According to Officer Young, K.K. seemed very distraught. When K.K. initially attempted to tell Officer Young, she "started bawling" and "she put her head in her hands" while she was crying and shaking her head. Officer Young testified that K.K. told him Skiba "did all kinds of things to me," and she began to cry and would not elaborate further.

The State called sexual assault nurse examiner Sheilah Priori as a witness. As part of Priori's exam, K.K. told Priori that the first sexual assault by her father occurred the summer before sixth grade and "the last time was at the end of the month in January [of 2011] on a weekend." According to K.K., there was oral, vaginal, and anal penetration. K.K. told Priori that Skiba taught her how to have sex by inserting his fingers inside her vagina then proceeding to have intercourse with her. According to K.K., he liked to take pictures of her laying down and have them on his camera and computer.

The State also called Largent. Largent testified that she was suspicious of the relationship between Skiba and K.K. because one day after K.K. finished swimming, she got out of the pool and jumped on Skiba's lap. She wrapped her arms around him and kissed him on the lips, which seemed unnatural to Largent. According to Largent, Skiba and K.K. were always "real clingy, holding each other." On February 1, 2011, Largent took custody of K.K. and K.L. when Skiba was arrested. Largent testified that a few days after Skiba was arrested, she was outside cleaning the pool when she heard K.K. scream

inside the house. When Largent went inside to see what motivated K.K.'s screams, Largent saw naked photographs of K.K. on a laptop.[3]

K.K. told the jury that Skiba had sexual intercourse with her multiple times— sometimes a couple of times a day. She cried, asked him to stop, and would tell him no, but he continued. According to K.K., Skiba told her that when she turned eighteen, they would move away and live together as husband and wife. As K.K. grew older, she realized it was wrong.[4]

The jury convicted Skiba of aggravated sexual assault. *See id.* This appeal followed.

## II.    OUTCRY WITNESS

Skiba contends that the trial court erred by allowing the State to use outcry evidence from Officer Young because K.K.'s statement to him did not qualify as an "outcry" but was merely part of Officer Young's police investigation and interrogation. The State responds that Officer Young was not disqualified as an "outcry witness" merely because he was a police officer engaged in an investigation. We agree with the State.

### A.    Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). When

---

[3] Skiba allegedly took nude photos of K.K., which were admitted as the State's Exhibits 3-8. These photographs have been sealed by the trial court.

[4] K.K. was twenty at the time of the trial.

4

considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id*. at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

**B.    Applicable Law**

To be admissible under article 38.072 of the code of criminal procedure, outcry testimony must be elicited from the first adult to whom the outcry is made. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through 2017 1st C.S.); *see also Chapman v. State*, 150 S.W.3d 809, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Article 38.072 requires "that the outcry witness . . . be the first person, 18 years or older, to whom the child makes a statement that in some discernible manner described the alleged offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 92. "The trial court has broad discretion in determining who is the proper outcry witness." *Zarco v. State*, 210 S.W.34d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Id*.

**C.    Discussion**

The record reflects that Officer Young was the first adult over the age of 18 to whom K.K. made a statement about the alleged offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Because Officer Young met the statutory requirements, the trial court did not abuse its discretion when it found he was the proper outcry witness. *See Zarco*, 210 S.W.3d at 830 (holding that the police detective was the proper outcry witness because the detective was the first person, 18 years or older, to whom the child made a detailed statement about the offense); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—

5

Texarkana 2000, pet ref'd) (holding that "an outcry witness is not person-specific, but event-specific"). It does not matter that Officer Young is a police officer or that he took K.K.'s statement as part of a criminal investigations. *See Zarco*, 210 S.W.3d at 830.

In any event, "improper outcry-witness testimony is harmless when other properly admitted witness testimony sets forth the same facts." *See Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd); *see also* TEX. R. APP. P. 44.2. K.K. later testified that Skiba first had sex with her when she was eleven years of age; therefore, any error associated with the admission of Officer Young's testimony would be harmless. *See id*. Accordingly, we overrule Skiba's first issue.

### III.    IMPROPER BOLSTERING

By his second issue, Skiba contends that the trial court abused its discretion when it overruled his objections to Priori and K.K.'s testimony on the bases that the State was improperly bolstering their testimony.

### A.    Applicable Law

Bolstering has been defined as "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (quoting *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). Texas courts have emphasized that bolstering occurs only when evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence. *Cohn*, 849 S.W.2d at 819; *Valcarcel v. State*, 765 S.W.2d 412, 415 (Tex. Crim. App. 1989) (holding that because an

6

officer was the first witness to testify, his testimony could not have been used to bolster a second officer's later testimony). However, when a witness has been impeached, the subsequent rehabilitation of that witness is not improper bolstering. *Nassouri v. State*, 503 S.W.3d 416, 420 (Tex. App.—San Antonio, 2016, no pet.).

**B.      Discussion**

Skiba complains that Priori's testimony "which was not in answer to any question by the State or the Defense Counsel would have the effect of 'bolstering' the testimony of a witness who had not yet taken the stand to testify." At trial, the following transpired:

> [State]:      Yes, ma'am. Now, did [K.K.] tell you about her last time that this happened to her?
>
> [Priori]:      Yes. She did. The last time she came from one of her friend's houses, I think it was Kiana (phonetic). She said she came from Kiana's house. That she got in the shower and he kept bugging her to do it and she kept saying no. And that he said he would allow her to go see [her boyfriend] on Monday if she did it and she wanted to see [her boyfriend], so [she said] I did it . . . . She said she cried because she didn't want to do it anymore. That's not unusual for like for me to hear that. I know that it can be pretty shocking to listen to but in my — in this experience I'm seeing her, you know, hundreds and hundreds of patients especially involved in similar situations, that's pretty common.
>
> [Defense]:      Objection to references to other cases, Judge.
>
> [Court]:      Overruled.

Skiba did not object on the basis of bolstering to the complained-of-testimony. Therefore, although Skiba objected to the testimony on other grounds, he has not preserved this issue regarding bolstering for appeal. *See* Tex. R. App. P. 33.1; *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial."). Nonetheless, Priori testified before K.K.

testified. Thus, her testimony could not have bolstered K.K.'s later testimony. *Cohn*, 849 S.W.2d at 819; *Valcarcel*, 765 S.W.2d at 415; *Hyde v. State*, 869 S.W.2d 660, 663 (Tex. App.—Beaumont 1994, no pet.) (holding that "improper 'bolstering' does not occur when the alleged 'bolstering' takes place *before* the unimpeached witness has had a chance to testify.") (emphasis in original).

Skiba also complains that the State improperly bolstered K.K.'s testimony when the State asked K.K. on redirect examination the following questions:

| [State]: | Five years later, why are you here? Why would you tell that story? Why would you go through what you've just gone through? |
|---|---|
| [K.K.]: | I wouldn't. |
| | . . . |
| [State]: | So if all of this was designed as an adolescent girl's, selfish decision, to you know, make a false claim so that you could get what you want, why have you stayed with it? Why have you kept in contact, why have you met with me and [another prosecutor] and why have you done this? |
| [K.K.] | Because it's not right. |
| [State]: | Are you standing to gain something? Are you going to be financially independent as a result of this? |
| [K.K.] | No. |
| [Defense]: | Objection, Your Honor. This is all improper bolstering. |
| [State]: | No, Your Honor. This is all going to a motive to carry out the kind of lie and scheme that counsel is suggesting that she is. |
| [Court]: | Overruled. |
| [State]: | Why? Why? Why go through a day when you don't need to before you testified? What are you looking for here today? |

8

[K.K.]:      Peace of mind, justice and the safety of other people and children.

Skiba's defense strategy was to attack K.K.'s credibility by suggesting that she fabricated all the incidents out of resentment for Skiba. Skiba's entire cross-examination was an attempt to show that K.K. lied about the alleged sexual abuse. Thus, Skiba opened the door to the State's questioning by implying that K.K. had fabricated her testimony. *See Nassouri,* 503 S.W.3d at 420. Because Skiba opened the door to the State's redirect examination and subsequent rehabilitation of K.K. regarding whether her testimony was truthful or fabricated, we cannot conclude that the trial court abused its discretion in concluding the State's questions did not amount to improper bolstering. *See id*. We overrule Skiba's second point of error.

## IV.    SPECULATION AND HEARSAY

Next, Skiba claims the trial court erred by overruling his objection to speculation and hearsay during Largent's testimony.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). A statement which is not offered to prove the truth of the matter asserted, but is offered for some other reason, is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).

At trial, the State asked the following question:

[State]:     Before you actually saw those pictures[,] did you ever ask [K.K.] what had gone on between her and the defendant?

[Defense]:   Calls for speculation and hearsay, Your Honor.

[Court]:     Overruled as to the question.

9

| [State]: | I'm not going to ask what she told her. |
|---|---|
| [Court]: | Overruled as to the question. |
| [State]: | Did you ask her? |
| [Largent]: | Yes. |
| [State]: | Did she tell you? |
| [Largent]: | Yes. |
| [State]: | I'm not going to ask you what she said. But you understand if they want, they can ask you those questions. |
| [Largent]: | Yes sir. |

Here, the State asked Largent whether she questioned K.K. about K.K.'s relationship with Skiba. Specifically, the State said it would not ask Largent what K.K.'s response was, and the State complied. Thus, the State's question was not offered to prove whether or not K.K. had a sexual relationship with Skiba, nor was it offered to prove anything that K.K. may have told Largent, and therefore is not hearsay. *See* TEX. R. EVID. 801(d). Accordingly, the trial court did not abuse its discretion in overruling Skiba's objection. We overrule his third issue.

## V. LEADING QUESTIONS

In his fourth point of error, Skiba argues that the trial court abused its discretion in overruling his objections to the State's leading questions.

### A. Applicable Law

"Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back." *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet ref'd) (quoting *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex. App.—Fort Worth 1998, pet. ref'd)). A

10

question is not leading simply because it can be answered "yes" or "no."  *Tinlin*, 983 S.W.2d at 70.  Rather, a question is impermissibly leading only when it suggests which answer is desired.  *Id*.

**B.    Discussion**

Skiba's complaint centers on the following trial testimony from Detective Fred Harris:

| | |
|---|---|
| [State]: | At that point who were the prosecutors on the case at that point? |
| [Harris]: | You and Shelly Strimple. |
| [State]: | Shelly Strimple? |
| [Harris]: | Yes. |
| [State]: | And prior to that time had we either – either of us been involved in the case? |
| [Defense]: | Objection, leading |
| [Court]: | Overruled. |

Skiba also complains the trial court improperly overruled his objection to K.K.'s testimony:

| | |
|---|---|
| [State]: | Did you falsely plant pictures that you had taken yourself, those pictures that – |
| [Defense]: | Objection, leading. |
| | . . . |
| [Court]: | What's your legal objection?  I didn't hear you. |
| [Defense]: | Leading.  Leading question. |
| [Court]: | Overruled. |

Here, the State asked questions that did not suggest the answers to the witnesses, instruct the witnesses how to answer, or put words into the witnesses' mouths to be

11

echoed back. *See Wheeler*, 433 S.W.3d at 655. Moreover, we cannot say, after the examining the record, that allowing the complained of testimony fell outside "zone of reasonable disagreement." *See Montgomery*, 810 S.W.2d at 391. Therefore, we conclude that the trial court did not abuse its discretion in admitting the testimony. *See Garcia,* 792 S.W.3d at 92. We overrule his fourth issue.

## VI.    CONCLUSION

Having overruled Skiba's issues, we affirm the judgment of the trial court.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of December, 2018.