

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00009-CR

_____

VALERIE LEE STANTON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Court at Law No. 3
Travis County, Texas
Trial Court No. C-1-CR-18-401515

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Valerie Lee Stanton was convicted by jury of the Class B misdemeanor offense of criminal mischief[1] and was sentenced by the trial court to two days' confinement in the Travis County Jail.[2] Stanton has filed a single brief, in which she raises two issues common to each of her appeals.[3] She maintains that (1) the trial court erred when it admitted certain expert testimony over her objection and (2) she is entitled to a new trial pursuant to Rule 34.6(f) of the Texas Rules of Appellate Procedure.

We fully addressed each of these issues in our opinion of this date on Stanton's appeal of her deadly conduct conviction in cause number 06-19-00008-CR. For the reasons stated in that opinion, we likewise conclude that error has not been shown with respect to the issues common to each of her appeals.

As in her appeal in cause number 06-19-00008-CR, Stanton also claims, in this appeal, that the evidence is insufficient to support her conviction. Because we have set out the facts and background of the case in our opinion in cause number 06-19-00008-CR, we repeat them here only to the extent necessary to resolve Stanton's point of error.

---

[1]*See* TEX. PENAL CODE ANN. § 28.03(b)(2).

[2]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]Stanton also appeals from a judgment of conviction for deadly conduct in cause number 06-19-00008-CR. Our opinion in that cause number is issued of even date herewith.

In evaluating legal sufficiency of the evidence supporting Stanton's conviction, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Stanton committed the offense of criminal mischief. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.; *see Allen v. State*, 436 S.W.3d 815 (Tex. App.—Texarkana 2014, pet. ref'd).

Stanton committed the offense of criminal mischief if, "without the effective consent of the owner," she "intentionally or knowingly damage[d or] destroy[ed]" the "tangible property of the owner," said property being a fence valued at more than $100, but less than $750.00. *See* TEX. PENAL CODE ANN. § 28.03(a)(1). Stanton challenges only the element of identity, claiming that the evidence is insufficient to prove, beyond a reasonable doubt, that she was the person who

3

damaged or destroyed the fence. In support of her argument, Stanton points to evidence which indicated only that she was walking near the dumpster at the time of the fire and that she was upset about the large amount of refuse in the parking lot of the apartment complex where she lived. Yet, "[i]dentiy may be proved by direct or circumstantial evidence" and may also be proved by inferences. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). "When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused." *Id.* Further, direct and circumstantial evidence are equally probative "[f]or the purpose[] of proving guilt beyond a reasonable doubt," *id.*, and "[m]otive is a significant circumstance indicating guilt," *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Here, the evidence showed that Stanton had a motive to start the fire that ultimately burned the fence. Approximately six weeks before the fire, Stanton had been drinking and told her neighbor that she was going to burn the refuse in the parking lot of the apartment complex where she lived. According to that same neighbor, Stanton was very upset about the refuse pile on the day of the fire and told him that she was going to burn it. The fire happened early that same afternoon. In addition to mattresses and other rubble, the fire also burned a tree and a six-foot privacy fence at the back of the complex that separated a residential neighborhood from the complex.

On the afternoon of the fire, James Etuale, a resident of the apartment complex, was coming home from lunch when he saw Stanton walking from a mattress fire behind a dumpster at the back of the apartment complex. When Etuale spotted Stanton, she was about ten yards from the fire,

4

which was then relatively small. Etuale approached Stanton and asked her if she had called the fire department. Stanton replied that she had not and told Etuale to let the fire burn a little longer, that the trash was overflowing, that the complex would do nothing about it, and that someone had to deal with it. When Etuale called 9-1-1, Stanton asked Etuale to tell investigators that she was with him "during the incident."

Not only was Stanton found near the fire when it was still relatively small, she asked Etuale to lie to authorities about her whereabouts when the fire started, expressed disregard for the fire, and stated that "someone had to deal with it." When interviewed by authorities about the origins of the fire, Stanton's statements were inconsistent. She initially indicated that, as she was leaving her apartment to meet a friend for lunch at around 1:30, she saw Etuale and they noticed the fire together. When pressed for details, Stanton changed her version of events and told investigators that she was not home at the time of the fire. "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to [authorities] are probative of wrongful conduct and are also circumstances of guilt." *Id*.

Viewing all the evidence in the light most favorable to the verdict, we conclude that the record contains legally sufficient evidence, including circumstantial evidence, from which a rational jury could reach the verdict that it did in finding Stanton guilty beyond a reasonable doubt of the offense of criminal mischief.[4]

---

[4]Stanton's brief includes a sub-issue in which she complains, "The State's failure to request an instruction on transferred intent should not be held against [her]," explaining that "the State should not benefit from its procedural default for failure to properly request a jury instruction when it is the only theory of liability by which [Stanton] could have been found guilty of criminal mischief." To the extent that Stanton is complaining that the State did not prove that she intentionally or knowingly damaged or destroyed the fence—as opposed to the debris pile—we reject this argument. The evidence at trial showed that the debris pile by the trash dumpster was propped against the fence. To

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 16, 2019
Date Decided:       November 5, 2019

Do Not Publish

the extent that Stanton is complaining of the State's failure to request a jury instruction on transferred intent, we reject this argument as meritless.