In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00177-CR**
_____

**WALTER STEVENS JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 18-29020**

## MEMORANDUM OPINION

A jury convicted appellant Walter Stevens Jones of murder and assessed punishment at thirty years of confinement and a $10,000 fine. In his sole appellate issue, Jones argues that the trial court erred by permitting a witness to testify in violation of Rule 614 of the Texas Rules of Evidence. *See* Tex. R. Evid. 614. We affirm the trial court's judgment.

1

James Bradford Jr. testified that on March 15, 2018, he witnessed an argument at Avery Trace Apartments (hereinafter "the complex"). Bradford explained that the argument lasted for about two hours. According to Bradford, Jones was arguing with the victim about Jones "slapping a girl." Bradford testified that the next day, he heard gunshots, and after stepping outside, he saw Jones "walking away from the man that was on the ground." Bradford explained that he heard Jones angrily say, "I told you-all that I ain't the one to be played with." Bradford told the authorities that the perpetrator was a black male with dreadlocks, and he identified Jones in a photographic lineup.

Thirteen-year-old S.G. testified that on March 16, 2018, he was living at the complex, and he heard men arguing. S.G. explained that he then "heard a couple of gunshots[,]" and he looked out the window and saw a man dying on the floor. S.G. explained that he told his mother that a man was dead outside, and he then returned to the window and saw a man in a white shirt running to a car from the breezeway. S.G. explained that the man he saw running had dreadlocks, but S.G. did not believe he could identify the man if he saw him again because he did not get a good look at the man's face. According to S.G., the man got into a vehicle and left the complex. S.G. went to the police station with his mother and gave a statement. During cross-examination, S.G. agreed that when he viewed a photo lineup, at one point he was

2

one hundred percent certain that a person other than Jones was the shooter. S.G. testified, "All I saw was dreads[,]" and he explained that he was nervous at the time.

Mary Ann Madison testified that on March 16, 2018, she was with her daughter Kristen who lives at the complex. Madison explained that they were returning to her daughter's apartment after going to the grocery store, and while Madison was walking up the stairs, she heard two men arguing. Madison explained that she turned around and saw two men "having words[,]" and she recognized the victim, who lived in the complex. Madison testified that she had seen Jones at the complex before, and she described Jones as having dreadlocks and identified him in court. According to Madison, the victim was walking away from Jones when the shooting occurred. Madison testified that Jones said to the victim, "Hey, n-----, don't walk away from me[,]" and as the victim started to turn around, Jones started shooting the victim. Madison testified that she was nervous when she spoke to the authorities, but she explained that she is certain Jones is the person who shot the victim. During cross-examination, Madison testified that she had picked another individual during a photographic lineup.

Kristen Madison ("Kristen") testified that while her mother went to put the groceries into Kristen's apartment, she sat in the car. Kristen testified that she heard two men arguing, and she stated that the men were "a guy with dreads" and the victim. Kristen identified Jones as the man with dreadlocks. Kristen heard Jones say

3

"N-----, don't walk away from me." According to Kristen, before the victim could fully turn around, Jones shot him. Kristen testified that the victim dropped to the ground, and the victim never raised his arm or tried to reach for a weapon. Kristen explained that shortly after the shooting, Jones got into a car and left.

Officer Ileana Jaquez of the Port Arthur Police Department testified that on the date in question, she was dispatched to respond to a "shots fired" call at the complex. Jaquez explained that when she arrived at the scene, she saw a black male on the ground and people gathered, another officer was present, and "they were doing CPR." Jacquez testified that the victim appeared to be dead when she arrived. The video from Jaquez's body camera was admitted into evidence and published to the jury. Jaquez testified that shell casings were recovered at the scene. According to Jaquez, the first officer on the scene told her that a gun was found on the victim. A body camera video from Officer Tony Legnon, who also responded to the scene and testified, was admitted into evidence and published to the jury.

Detective Terry Cater of the Port Arthur Police Department testified that on March 16, 2018, he was dispatched to the complex in reference to a shooting. Cater testified that three or four detectives were on the scene, and one detective went to the hospital. According to Cater, he located three witnesses (S.G., Bradford, and Kristen) and scheduled them to provide statements at the station. Cater explained that he later learned that Madison was also a witness. Cater testified that after

4

Bradford said the shooter was the same black male he had previously seen at the complex, Cater developed Jones as the suspect, and he included Jones's photograph when preparing a photo array. According to Cater, another individual who was identified from the photo array by two individuals was eliminated as a suspect because he had an alibi.

Forensic pathologist Dr. John Wayne testified that he performed an autopsy of the victim. Photographs from the autopsy were offered and admitted into evidence. According to Wayne, the victim sustained four gunshot wounds, and the cause of the victim's death was a perforating gunshot wound to the torso.

After the State rested, the defense called Franchell Attaway to testify. Attaway testified that Jones was with her at her home when the shooting occurred. Attaway explained that on March 16, 2018, her mother, who lives at the complex, called to tell her that a shooting had occurred at the complex, and Jones was still in Attaway's home when she received the call. The defense rested after Attaway's testimony.

The State called Shondrelle Eckford as a rebuttal witness, and defense counsel objected. The trial judge overruled the objection. Eckford testified that the victim is her cousin. According to Eckford, on the day of the shooting, the victim met her at work, and then she and the victim went to her home at the complex. Eckford testified that on the way to her apartment, she saw Jones, who she had seen before at the complex. During cross-examination, Eckford testified that she had sat with the

victim's family throughout the trial. Eckford testified, "I'm here in support of my aunt."

ISSUE ONE

In his sole appellate issue, Jones contends the trial court erred by permitting Eckford to testify in violation of Rule 614 of the Texas Rules of Evidence. *See* Tex. R. Evid. 614. At the beginning of the trial, after the reading of the indictment, defense counsel invoked the Rule, and the trial judge explained that defense counsel had invoked the rule of sequestration and instructed witnesses to remain outside while other witnesses testify and not to discuss their testimony with each other.

We review a trial court's ruling admitting evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable theory of law. *Id*. at 418. Rule 614 of the Texas Rules of Evidence requires trial courts to exclude witnesses from the courtroom when other witnesses testify. *See* Tex. R. Evid. 614 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony."). Violations of Rule 614 are non-constitutional error, so we must disregard such an error unless it affected Jones's substantial rights. *See* Tex. R. App. P. 44.2(b); *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005); *Wilson v. State*, 179 S.W.3d 240, 248 (Tex. App.—Texarkana 2005, no pet.). If we have fair assurance that the error did not

influence the jury or had but slight effect, a party's substantial right is not affected. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Allen v. State*, 436 S.W.3d 815, 824 (Tex. App.—Texarkana 2014, pet. ref'd).

Assuming without deciding that permitting Eckford to testify constituted error, we have fair assurance that Eckford's testimony did not influence the jury or had but slight effect. *See Solomon*, 49 S.W.3d at 365; *Allen*, 436 S.W.3d at 824. We therefore conclude that the admission of Eckford's testimony did not affect Jones's substantial rights. *See* Tex. R. App. P. 44.2(b); *Russell*, 155 S.W.3d at 181; *Wilson*, 179 S.W.3d at 248. Accordingly, we overrule issue one and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 18, 2020
Opinion Delivered December 30, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

7