

# IN THE
# TENTH COURT OF APPEALS

### No. 10-17-00240-CR

**JOSE ANGEL ROJAS-MELITON,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court
Brazos County, Texas
Trial Court No. 16-03565-CRF-361**

## MEMORANDUM  OPINION

A jury found Appellant Jose Rojas-Meliton guilty of the aggravated sexual assault of his sister-in-law, a child younger than fourteen years old when the offense occurred, *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B), and assessed his punishment at seventy-five years' imprisonment, *see id.* §§ 12.32, 22.021(d).  This appeal ensued.  In his sole issue, Rojas-Meliton contends that he was denied reasonably effective assistance of counsel at trial.  We will affirm.

## Applicable Law

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* There is a strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption of reasonably professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble*

*v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing *Jackson v.*
*State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Therefore, absent specific explanations
for counsel's decisions, a record on direct appeal will rarely contain sufficient information
to evaluate an ineffective-assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002).

### Rojas-Meliton's Argument

Rojas-Meliton argues that his trial counsel's performance was deficient in the
following ways: (1) his trial counsel failed to preserve for appellate review a meritorious
challenge for cause of Prospective Juror 27; (2) his trial counsel failed to make a single
objection, including failing to object to "innumerable" leading questions during both the
guilt-innocence and punishment phases of trial; (3) his trial counsel failed to object to the
legal opinions given by Detective Chris Loup in his testimony during the guilt-innocence
phase of trial; (4) his trial counsel failed to object to several instances of hearsay during
the punishment phase of trial; and (5) his trial counsel failed to object to evidence of two
extraneous offenses that were introduced during the punishment phase of trial.

No motion for new trial was filed in this case. The record is therefore silent as to
trial counsel's reasons for his actions and decisions. Rojas-Meliton argues, however, that
his trial counsel's deficiencies were so significant that no reasonable trial strategy could
justify them, making his counsel's subjective reasons for his actions and decisions
irrelevant. Furthermore, while Rojas-Meliton concedes that the second prong of
*Strickland* is not met with regard to the guilt-innocence phase of trial, he argues that his

defense was prejudiced by his trial counsel's deficient performance during the punishment phase of trial.

## The Court's Analysis

1. *Failing to preserve for appellate review a challenge for cause of Prospective Juror 27*

During voir dire of the entire prospective jury panel, Prospective Juror 27 asserted that she could not consider probation in this type of case. When questioned by Rojas-Meliton's trial counsel outside of the presence of the prospective jury panel, Prospective Juror 27 affirmed that she was absolutely certain that she could not consider probation in this type of case. She also volunteered that she was a victim of sexual abuse as a child.

When questioned by the State outside of the presence of the prospective jury panel, however, the following exchange took place:

> [Prosecutor]: Now, the question I have to ask you is, if you're on the jury would you be able to follow the law and base your verdict just on the facts and circumstances of this case and not based on what happened to you?
>
> PROSPECTIVE JUROR 27: Yes.
>
> . . . .
>
> [Prosecutor]: So before you know the facts, can you come in with an open mind that probation may be appropriate, life may be appropriate, and you can wait until you start hearing the first fact before you start closing off potential punishments? Can you do that?
>
> PROSPECTIVE JUROR 27: I think I could, yes, sir.
>
> [Prosecutor]: You said you think you can. Can you promise the Court that you can?
>
> PROSPECTIVE JUROR 27: Yes, yes.

Rojas-Meliton's trial counsel then asked Prospective Juror 27, "So I go back to when you told me absolutely not. It's not absolutely?" Prospective Juror 27 replied, "It's - - I have an open mind. I can hear both sides. It would be hard, but I'm able to do it, and, yes, I can do it."

Rojas-Meliton's trial counsel challenged Prospective Juror 27 for cause. The trial court denied the challenge. Rojas-Meliton's trial counsel did not thereafter exercise a peremptory challenge against Prospective Juror 27 and did not preserve his challenge for cause against her for appellate review. Prospective Juror 27 served as a juror.

In *State v. Morales*, 253 S.W.3d 686 (Tex. Crim. App. 2008), the Court of Criminal Appeals "reject[ed] the court of appeals's conclusion that, because the appellant's trial attorneys failed to exercise a peremptory challenge against [a prospective juror] and thereby failed to preserve their challenge for cause against her for appeal, they necessarily performed deficiently in contemplation of *Strickland*." *Id.* at 368. The Court of Criminal Appeals explained that "the decision to retain [the prospective juror] in spite of the earlier challenge for cause could well have been a reasonable tactical choice, albeit a difficult one." *Id.* Thus, assuming in the instant case that Prospective Juror 27 was challengeable for cause, without evidence as to trial counsel's reasons for his actions and decisions, we must conclude that Rojas-Meliton has not overcome the presumption that his trial counsel's decision not to preserve for appellate review his challenge for cause of Prospective Juror 27 was reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

2. *Failing to make a single objection, including failing to object to "innumerable" leading questions during both the guilt-innocence and punishment phases of trial*

"Despite the general rule disfavoring the use of leading questions on direct examination, 'it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway.'" *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd)). Here, assuming that the State did ask "innumerable" leading questions, Rojas-Meliton has not established that the testimony sought in the questioning was inadmissible or would not have otherwise come into evidence if his trial counsel had objected, the trial court had sustained the objection, and the State had rephrased its questions. Without evidence as to trial counsel's reasons for his actions and decisions, we must therefore conclude that Rojas-Meliton has not overcome the presumption that his trial counsel's decision not to object was reasonably professional and motivated by sound trial strategy. *See id.* at 655-56.

3. *Failing to object to the legal opinions given by Detective Loup in his testimony during the guilt-innocence phase of trial*

Rojas-Meliton identifies three specific instances where his trial counsel failed to object to alleged legal opinions during the guilt-innocence phase of trial. First, Rojas-Melton notes that his trial counsel did not object when the State asked Detective Loup, "Now, investigating these crimes, did - - are you familiar with what penetration means?" to which Detective Loup replied, "Yes," and then explained what it meant. Second, Rojas-Meliton points out that his trial counsel did not object when the State asked, "And you're aware that we don't have to prove a precise date, correct?" to which Detective

Loup replied, "Correct." Finally, Rojas-Meliton noted that his trial counsel did not object to the alleged legal opinion given by Detective Loup in the following exchange with Rojas-Meliton's trial counsel:

> Q. Did you ever discuss with [the victim] the roughhousing?
>
> A. No.
>
> Q. So you never discussed with her the details?
>
> A. After I spoke with him the second time and he confessed to having sex with her, she was underage and in my point of view it didn't matter if they were roughhousing or not.
>
> Q. So you - - basically at that point you - -
>
> A. I met the elements of the crime and I had enough.

Because the record is silent as to trial counsel's reasons for his actions and decisions, however, to conclude that trial counsel was ineffective based on his failing to object would call for speculation, which we will not do. *See Jackson*, 877 S.W.2d at 771; *Gamble*, 916 S.W.2d at 93. Moreover, the instances that Rojas-Meliton has identified occurred during the guilt-innocence phase of trial, and Rojas-Meliton has conceded that the second prong of *Strickland* is not met with regard to the guilt-innocence phase of trial. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

4. *Failing to object to several instances of hearsay during the punishment phase of trial*

Rojas-Meliton identifies the following specific instances of his trial counsel failing to object to alleged hearsay during the punishment phase of trial. Rojas-Meliton first notes that his trial counsel did not object when the State asked J.J., a friend of Rojas-Meliton's daughter, what Rojas-Meliton's daughter had said to her, and J.J. replied, "That

her dad had touched her." Rojas-Meliton also argues that his trial counsel did not object to the hearsay statements made by J.J. in the following exchange with the State:

> Q.      Why is that?
>
> A.      Because [Rojas-Meliton's daughter] told me if I had any food - - then she asked me to give her it and I did.
>
> Q.      Did she not have food at home?
>
> A.      She said she didn't.

Finally, Rojas-Meliton asserts that his trial counsel did not object when the State asked Rojas-Meliton's daughter's teacher, "And what else did she tell you in that specific - - in that specific question, what did she ask you?" and the teacher replied, "She asked me what [sex] was. And I was uncomfortable answering it and I answered it the best I could. And she told me that her dad had sex with her."

The State asserts, however, that after J.J. and the daughter's teacher testified, United States Secret Service Special Agent Louis Wright testified that during an interview of Rojas-Meliton, Rojas-Meliton confessed to touching his daughter inappropriately, which makes the first hearsay statement by J.J. cumulative.[1] *See Darby v. State*, 922 S.W.2d 614, 624 (Tex. App.—Fort Worth 1996, pet. ref'd) ("The failure to object to cumulative evidence is harmless and will not support a claim of ineffective assistance of counsel."). The State also argues that Rojas-Meliton has not shown how his defense was prejudiced by J.J.'s statement about the food. Under these circumstances and without evidence as to

---

[1] Rojas-Meliton's daughter later testified that Rojas-Meliton had not touched her inappropriately and that she had never said that he did.

trial counsel's reasons for his actions and decisions, we must therefore conclude that Rojas-Meliton has not overcome the presumption that trial counsel's decision not to object was reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

5. *Failing to object to evidence of two extraneous offenses that were introduced during the punishment phase of trial*

Rojas-Meliton first notes that his trial counsel failed to object when the State presented the evidence that he had sexually assaulted his daughter. In addition to J.J.'s and the daughter's teacher's testimony detailed above, Rojas-Meliton points out that J.J.'s grandmother testified as follows when questioned by the State:

> Q. Did you ever confront [Rojas-Meliton's daughter] about those allegations?
>
> A. Yes, I did.
>
> Q. What did you say to her?
>
> A. Well, I had said, I saw your dad on TV, and said something about he had molested you or something.
>
> Q. How did she react to that?
>
> A. Well, she just dropped her head and just looked at me. And I said, you don't have to be ashamed. If it happened, you could tell someone. And I asked her, did it happen? And she didn't say anything, she just dropped her head and started to cry.

Evidence may be offered during the punishment phase concerning

> any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless

of whether he had previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a). The trial court makes the decision on the threshold issue of admissibility and may not admit extraneous offense evidence unless the evidence is such that a jury could rationally find the defendant criminally responsible for the extraneous offense. *Smith v. State*, 227 S.W.3d 753, 759-60 (Tex. Crim. App. 2007). Ultimately, the factfinder must decide whether the extraneous offense was proven beyond a reasonable doubt. *Id.* at 760.

Rojas-Meliton complains that his trial counsel was deficient because he failed both "to object to the extraneous offense evidence and to request a threshold determination." As stated above, however, Special Agent Wright testified that during an interview of Rojas-Meliton, Rojas-Meliton confessed to touching his daughter inappropriately. Under these circumstances and without evidence as to trial counsel's reasons for his actions and decisions, we must therefore conclude that Rojas-Meliton has not overcome the presumption that trial counsel's decision not to object was reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

Rojas-Meliton next notes that his trial counsel failed to object when the State called another of his sisters-in-law as a rebuttal witness and the following exchange occurred:

> Q.      I just have one question for you . . . :  Did Jose Rojas sexually abuse you when you were a child  - -  when you were a teenager?
>
> A.      Yes.

Rojas-Meliton complains that his trial counsel did not object to the leading question or that the question exceeded the scope of rebuttal.

Code of Criminal Procedure art. 36.02 provides, however: "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. § 36.02. Thus, even if the State's question exceeded the scope of rebuttal, the State could have requested to reopen the case to introduce the testimony. And, as stated above, despite the general rule disfavoring the use of leading questions on direct examination, it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway. *Wheeler*, 433 S.W.3d at 655. Without evidence as to trial counsel's reasons for his actions and decisions, we must therefore conclude that Rojas-Meliton has not overcome the presumption that his trial counsel's decision not to object was reasonably professional and motivated by sound trial strategy.

Considering the totality of Rojas-Meliton's trial counsel's representation, we conclude that Rojas-Meliton has not proven by a preponderance of the evidence that (1) his counsel's performance was deficient, and (2) his defense was prejudiced by counsel's deficient performance. Based on the record before us, we therefore cannot conclude that Rojas-Meliton has shown that he was denied reasonably effective assistance of counsel at trial. We overrule Rojas-Meliton's sole issue and affirm the trial court's judgment.


REX D. DAVIS
Justice

Rojas-Meliton v. State                                                                                              Page 11

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed July 31, 2019
Do not publish
[CRPM]

